# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

Civil Action
No.04-10544NMG

### Timothy Dykens,
#### Petitioner,

### v.

### Peter Allen
#### Respondent.

---

## ON APPEAL FROM THE JUDGMENT OF THE STATE
## COURT PURSUANT TO 28 U.S.C.§ 2254.

---

## PETITIONER'S MEMORANDUM

---

Timothy Dykens
MCI- Cedar Junction
P.O. Box 100
South Walpole, MA 02071

Dated 2 January 2006

i

## TABLE OF CASES

Cases                                                    Page(s)

Anderson v. Warden, 696 F.2d 296(4th Cir. 1982
en banc) . . . . . . . . . . . . . . . . . . . . .    30

Arizona v. Fulminante, 499 US.279(1991). . . . . . . 24,54

Berryman v. Morton, 100 F.3d 1089 (3rd Cir. 1996). .    38

Blackburn v. Foltz, 828 F.2d 1177(6th Cir. 1987). . .    38

Bolm v. Triumph Corp., 397 N.Y.S. 2d 498, 58 A.D. . .    23
2d1014,(1977)

Bowen v. Maynard, 799 F.2d 593(10th Cir. 1986). . . .    39

Boyde v. California, 494 U.S. 370 (1990). . . . . . .    40

Brecht v. Abrahamson,507 U.S. 619(1993). . . . . . .    40

Brookhart v. Janis, 384 U.S. 1(1996). . . . . . . . .    55

Cabral v. Sullivan, 961 F.2d 998(1st Cir 1992). . . .    20

Calderon v. Coleman, 525 U.S. 141(1998). . . . . . . .    40

Chambers v. Armontrout, 907 F.2d 825(8th Cir. 1990). .    45

Chambers v. Mississippi, 410 US. 284 (1972). . . . . .    39

Clemons v. Sowders, 34 f.3d 352(6th Cir 1994). . . .    27

Clemons v. Delo, 124 F.3d 944(8th Cir. 1997) . . . .    55

Commonwealth v. Alphas, 430 Mass (1999)             38,55

Commonwealth v. Angiulo, 415 Mass. 502 (1993). . . .    18

Commonwealth v. Arment,412 Mass. 55(1992). . . . . .    18

Commonwealth v. Basset, 21 Mass.App. Ct. 713(1986). .    37

Commonwealth v. Blondin, 324 Mass. 564(1949). . . . .    50

Commonwealth v. Byrd, 598 A.2d 1011(PA. Super. 1991)    30

Commonwealth v. Cancel, 394 Mass. 567(1985). . . . .    37

Commonwealth v. Cote,5 Mass.App.Ct. 365(1977). . . .    41

Commonwealth v. D'Amour,428 Mass. 725(1999). . . . .    48

Commonwealth v. DiBenedetto,427 Mass. 414 (1998). . .    27

Commonwealth v. Druken, 356 Mass. 503 (1969). . . . .    18

Commonwealth v. Farley, 432 Mass. 153(2000). . . .38,47,48

Commonwealth v. Fernandes,427 Mass.90(1998). . . . .    32

Commonwealth v. Foran, 110 Mass. 179(1872) . . . . .    41

Commonwealth v. Freeman,352 Mass. 556 (1967) . . . .    56

Commonwealth v. Gagnon, 37 Mass.App.Ct. 626(1994). .    47

Commonwealth v. Gelpi, 416 Mass. 729(1994) . . . . .    32

Commonwealth v. Gilmore, 399 Mass. 741 (1987) . . . .    41

Commonwealth v. Graziano,368 Mass. 325(1975) . . . .    39

Commonwealth v. Harris,387 Mass. 758(1982) . . . . .    36

Commonwealth v. Kane,19 Mass.App.Ct. 129(1984) . . .    41

Commonwealth v. Karaffa, 709 A.2d 887(Pa. 1998) . . .    33

Commonwealth v. Lamrini, 392 Mass. 427 (1984) . . . .    40

Commonwealth v. Lavalley, 410 Mass. 641(1991) . . .    26

Commonwealth v. Lennon, 399 Mass. 443(1987). . . . .    29

Commonwealth v. Licata, 412 Mass. 654(1992). . . . . 38,47

Commonwealth v. Marshall, 356. 432 (1969). . . . .50,54,56

Commonwealth v. Martin, 424 Mass. 301 (1997) . . . .    27

Commonwealth v. Mazza, 399 Mass. 395 (1987) . . . . .    32

Commonwealth v. Mulica, 401 Mass. 812(1988). . . .29,41,42

Commonwealth v. Peloquin, 52 Mass.App.Ct.480(2001). .   32

Commonwealth v. Porter, 10 Met. (51 Mass.)
263 (1845). . . . . . . . . . . . . . . . . . .18,19,28,50

Commonwealth v. Safarian,366 Mass. 89(1974). . . . .   56

Commonwealth v. Salemme,395 Mass. 594 (1985) . . . . 32,39

Commonwealth v. Santos, 402 Mass.775 (1988) . . . . .   27

Commonwealth v. Skinner, 408 Mass. 88(1990). . . . . 29,38

Commonwealth v. St.Germain,381 Mass
256(1980). . . . . . . . . . . . . . . . . . 17,19,21,31

Commonwealth v. Street, 388 Mass.281(1983). . . . 45,49,55

Commonwealth v. Repoza,400 Mass. 516(1987) . . . . .   29

Commonwealth v. Rosado,408 Mass. 561(1990) . . . . .   46

Commonwealth v. Rossi, 19 Mass.App.Ct. 257(1985) . .   56

Commonwealth v. Tucker, 189 Mass. 457 (1905) . . . .   17

Commonwealth v. Wilborne, 382 Mass. 241(1981). . .17,21,31

Conde v. Henry, 198 F.3d 734 (9th Cir. 1999). .33,41,42,49

Cooper v. Sowders, 837 F.2d 284(6th Cir. 1988). . . .   38

Cool v. United States, 409 U.S. 100(1972). . . . . .   29

Corsa v. Anderson, 443 F.Supp. 176(E.D. Mich. 1977).   33

Cornett v. State, 436 N.E. 2d 765(Indiana 1982) . . .   27

Crane v. Kentucky, 476 U.S. 683(1986) . . . . . . .  41,45

Davis v. Reynolds,890 F.2d 1105 (10th Cir. 1989). . 53,54

DeLuca v. Lord,858 F.Supp. 1330(S.D. NY.1994). . . . 46,47

DePetris v. Kuykendall, 239 F.3d 1057 (9th Cir.
2001). . . . . . . . . . . . . . . . . . . . . .   45

Ducan v. Louisiana, 391 U.S. 145 (1968) . . . . . .    50

English v. Artuz, 164 F.3d 105(2nd Cir.1998). . . .    54

Estes v. Texas, 381 U.S. 532(1965) . . . . . . . . .    51

Flore v. White, 928 U.S. 23 (2000) . . . . . . . . .    19

Freeman v. Class, 95 F.3d 639 (8th Cir. 1996) . . .    32

Gannett Co. v. DePasquale, 443 U.S. 368 (1979) . . .    55

Genius v. Pepe,50 F.3d 60 (1st Cir. 1995) . . . . .    46

Gibson v. Clanon, 633 F.2d 851 (9th Cir 1980) . . .    28

Globe Newspaper Co. v. Superior Court for Norfolk
County 457 U.S. 596 (1982). . . . . . . . . . . . . .    54

Grady v. Artuz, 931 F.Supp.1048 (S.D.N.Y. 1996). . .    47

Gray v. Lynn, 6 F.3d 263 (5th Cir 1993). . . . . .    42,48

Griffin v. Warden, 970 F.2d 1355(4th Cir. 1992). . .    38

Grimes v. State, 404 S.E.2d 324 (GA. App.1991),
199 GA. App. 152 (1991) . . . . . . . . . . . . . .    30

Guam v. Marquez, 963 F.2d 1311(9th Cir 1992) . . . .    25

Guzman v. Scully, 80 F.3d 772(2nd Cir. 1996) . . .    52,54

Hart v. Gomez, 174 F.3d 1067 (9th Cir. 1999) . . . .    45

Hashim v. Kalil, 388 Mass. 607 (1988) . . . . . . .    20

Helton v. Secretary for Department of Correction 233
F.3d 1322 (11th Cir. 2000) . . . . . . . . . . . . .    45

Henderson V. Sargent, 926 F.2d 706(8th Cir. 1991). .    39

Herring v. New York, 422 U.S. 853(1975) . . . . . .    41

In Re Oliver, 333 U.S. 257(1948) . . . . . . . . . 50,51

Jackson v. Indiana, 406 U.S. 715 (1972) . . . . . .    19

Johnson v. Arizona, 462 F.2d 1352 (9th Cir. 1972) . 19,50

Johnson v. State, 887 S.W.2d 957 (Texas, Cr. App.1994).22

Johnson v. United States, 520 U.S. 461 (1997) . . .    54

Jones v. Henderson,683 F.Supp. 917 (E.D. N.Y.1988).    55

Jones v. Wood, 207 F.3d 557(9th Cir 2000) . . . . .    39

Judd v. Haley, 250 F.3d 1308(11th Cir. 2001) . . . .   54

Kyles v. Whitley, 514 U.S. 419 (1995) . . . . . . .    39

Kubat v. Thieret, 867 F.2d 351(7th Cir. 1989) . . .    42

Lanigan v. Maloney, 853 F.2d 40 (1st Cir. 1988) . .    29

Lucas v. O'Dea,179 F.3d 412(6th Cir.1999). . . . 33,39,42

Mahorney V Wallman, 917 F.2d 469(10th Cir 1990) . .    38

Miller v. Angliker, 848 F.2d 1312(2nd Cir 1988) . .    39

Moore v. Johnson, 194 F.3d 586(5th Cir 1999). . . .    38

Morris v. Woodford, 273 F.3d 826 (9th Cir 2001)..21,28,36

Murphy v. Commissioner, 415 Mass. 218(1993) . . . .    50

Murray v. Carrier, 477 U.S. 478(1986). . . . . . . .   32

Myers v. Ylst, 897 F.2d 417(9th Cir. 1990). . . .  19,50

Neder v. United States,527 U.S.1(1999) . . . . . . .   54

Payne v. State, 395 So.2d 284 (Fla.App. 1981) . . .    30

Pettijohn v. Hall, 599 F.2d 476 (1st Cir. 1979). . .   41

People v. Anderson, 542 NYS. 2d 592 (A.D.1 Dept. 1989), 151 A.D. 2d 335 (1989) . . . . . . . . . . . .    26

People v. Hill, 519 N.Y.S. 2d 549, 133 AD 2d 56(1987).    30

People v. Johnson, 584 NYS 2d 32, A.D. 1 Dept. (1992).    30

Peple v. Morales, 559 NYS. 2d 869 (A.D.1 Dept 1990) 159 A.D. 2d 86 (1990) . . . . . . . . . . . . . .    23,26

People v. Morales, 562 NYS. 2d 380 (1990); 165 A.D. 2d 725 (1990) . . . . . . . . . . . . . . . . . . .    23,26

People v. Rodriquez, 618 NYS. 2nd 335,(A.D. 1 Dept. 1994) 209 A.D. 2d 237(1994) . . . . . . . . . . .    53

People v. Saunders, 467 N.Y.S. 2d 110(Sup.1983) . . .    22

People v. Sotomyer, 569 N.Y.S. 2d 973 (A.D. 2 Dept. 1991) 173 A.D. 3d 500(1991) . . . . . . . . . . . .    30

People v. Sullivan, 559 NYS. 2d 881, (A.D.1Dept.1990) 160 A.D. 2d 161(1990) . . . . . . . . . . . . . . .    23

People v. Sundquist, 572 N.Y.S. 2d 410(A.D.3 Dept.1991)    22

People v. Tucker, 550 N.Y.S. 2d 1 (A.D.1Dept.1990)    22,26

People v. Valenti,559 N.Y.S. 2d 666(A.D.2Dept.1990).    22

People v. Valle,531 NYS 2d 929 (A.D.2 Dept.1988) . . .    30

People v. Westergren,520 NYS.2d 774 (A.D.1Dept.1987) . . . . . . . . . . . . . . . . . . . .    30

People v. Williams, 85 F.3d 39(2nd Cir 1996) . . . ..    52

People v.United States, 199 F.3d 37 (1st Cir. 1999) . .    42

People v. Vose, 830 F.2d 1197(1st Cir. 1987) . . . . .    32

Ouerciavv. United States,289 U.S. 466(1933) . . .    29,52

Oyola v. Bowers, 947 F.2d 928(11th Cir.1991) . . . . 33,42

Riley v. Deeds, 56 F.3d 1117(9th Cir. 1995) . . . . .  25

Rodriquez v. Hoke, 928 F.2d 534(2nd Cir. 1991) . . .  38

Rushen v. Spain, 464 U.S. 114 (1983) . . . . . . . . .  26

Rutledge v. United States, 517 U.S. 292(1996) . . . .  48

Skinner v. Oklahoma, 316 U.S. 535(1942). . . . . . . .  19

Sligar v. Barlett, 916 F.2d 1383 (Oklahoma 1996) . . .  22

State v. Bone Club, 906 P.2d 325(Wash 1995)

128 Wash.2d 254 (1995) . . . . . . . . . . . . . . . .  53

State v. McCloud 349 N.W.2d 590(Minn.App.1984) . . .  30

State v. Triplett, 421 S.E.2d 511 (W.Va. 1992) 187
W.Va. 760(1992) . . . . . . . . . . . . . . . . . . .  22

State v. Waddell, 498 N.E. 2d 195(Ohio App.1985),
26 Ohio App. 3d 33 . . . . . . . . . . . . . . . . . .  34

Strickland v. Washington, 466 U.S. 668(1984) . . . . .  33

Torres v. Attorney General, 391 Mass. 1,(1984) . . . .  20

Troedel v. Wainwright, 667 F.Supp. 1456(S.D.FLA 1986)  39

United States v Beckman, 222 F.3d 512 (8th Cir. 2000)  38

United States v. Butts, 630 F.Supp. 1145(D.Me.1986) .  46

United States v. Gray, 878 F.2d 702 (3rd Cir 1989) . .  38

United States v. Hanos, 184 F.3d 1324(11th Cir. 1999) . 38

United States v. Noble, 155 F.2d 315(3rd Cir. 1946) . . 25

United States v. Noushfar, 78 F.3d 1442.

(9th Cir. 1996) . . . . . . . . . . . . . . . . . . .  25

United States v. Oppon, 863 F.2d 141(1st Cir.1988). .22,31

United States v. Parent, 954 F.2d 23 (1st Cir.1992) . . 29

United States v. Peters, 754 F.2d 753(7th Cir. 1985) .  54

United States v. Porter, 764 F.2d 1(1st Cir. 1985) . 22,31

United States v. Sanchez, 176 F.3d 1214(9th Cir.1999)  38

United States v. Schilleci, 545 F.2d 519(5th Cir.1977)  27

United States v. Van Dyke, 14 F.3d 415(8th Cir.1994)   31

Vidal V. Williams, 31 F.3d 67(2nd Cir. 1994) . . . . . 53

Waller v. Georgia 467 US. 39(1984). . . . . . .53,54,55,56

Warner v. Zent, 997 F.2d 116(6th Cir.1993) . . . . . 26,36

Washington v. Hofbauer,228 F.3d 689(6th Cir.2000). . 31,56

Watson v. Jago, 558 F.2d 330 (6th Cir. 1977) . . . . . 39

White v. McAninch, 235 F.3d 988(6th Cir.2000). . . .  32

Williams v. Washington, 59 F.3d 673(7th Cir 1995). . 38,45

Zarattini v. State, 571 So.2d 553(Fla.App. 4,
Dist.1990). . . . . . . . . . . . . . . . . . . .  30

United States Constitution

  Sixth Amendment. . . . . . . . . . . . 11,37,50,55

  Fourteenth Amendment . . . . . . . . . . 11,19,37,50

Massachusetts Declaration Of Rights

  Article I . . . . . . . . . . . . . . . . .11,18,28,50

      X . . . . . . . . . . . . . . . . .11,18,28,50

      XI. . . . . . . . . . . . . . . . .11,18,28,50

      XII . . . . . . . . . . . . . . 11,18,28,37,50

      XXIX. . . . . . . . . . . . . . . .11,18,28,50

United States Codes

  28 U.S.C.§2254. . . . . . . . . . . . . . . . . 32

Massachusetts General Laws

  G.L.ch.265,§1 . . . . . . . . . . . . . . . . . X,15

  G.L.ch.265,§26. . . . . . . . . . . . . . . . . .X

  G.L.ch.265,§6 . . . . . . . . . . . . . . . . . .X

Massachusetts Rules Of The Superior Court

  Rule 8A . . . . . . . . . . . . 18,19,20,21,24,33,36

Massachusetts Rules of Criminal Procedure

  Rule 24 . . . . . . . . . . . . . . . . . . . . 33

Treatises and other authorities

  H.B. Zobel, the Boston Massacre . . . . . . . . . 17

  Taking And Use Of Trial Notes By Jury. . . .17,22,34

  The Adams Papers, Legal Papers of John Adams. . . 17

  Traynor, The Riddle Of Harmless Error. . . . . . .30

  Written Instruction With The Criminal Jury. . . . 21

## STATEMENT OF THE CASE

On June 12, 1996, an Essex County Grand Jury returned indictment 9677-CR-1729 charging the defendant with the offense of murder in the first degree in violation of G.L. ch 265   § 6; and indictment 9677-CR-1730 charging the defendant with the offense of attempted aggravated rape in violation of G.L. ch 274, §6; and indictment 9677-CR-1731 charging the defendant with the offense of kidnapping in violation of G.L.ch 265, §26.[1] (A-1,9,17)*

Trial commenced on October 20, 1997 and on October 27, 1997, the jury returned a verdict of guilty on indictment 1729 by reason of deliberately premeditated malice aforethought and extreme atrocity or cruelty and guilty verdicts on each of the other indictments. On the murder indictment, the Court, Grasso,J., imposed a sentence of life and concurrent sentences of 3 to 5 years on the attempted aggravated rape charge and 8 to 10 years on the kidnapping charge.(Tr. XI-176-177) The defendant duly filed a Notice of Appeal. (A-25) On February 26,1999, the defendant's Motion For New Trial was filed in The SJC.

---

* Citations to the Appendix will be denoted (A- ); citations to the transcript of the trial will be denoted as follows: 10/20/97 (Day 1) Tr.I; 10/21/97: (Day two, Part one),Tr. II; 10/21/97/: (Day Two, Part Two) TR. III; 10/21/97: (Daw Two 2:00 pm to 4:00 pm.) Tr. IV; 10/22/97: ( Day Three, Part One), Tr. V; 10/22/97 (Day Three  Part Two), Tr. VI; 10/22/97: (Day Three, 2:00PM)to 4:00 pm.) Tr.VII, 10/23/97: (Day Four, Part One), Tr. VIII; 10/23/97 (Day Four part two) Tr.IX; 10/23/97: (Day four, 2:00pm to 4:00pm.) TR. X; 10/27/97: (Day Five) Tr. XI

Xi

On March 1,1999, the S.J.C. ordered the Appellate

proceedings stayed and remanded the motion for a new

trial. On June 2,1999, The Superior Court Judge Grassð,

J., issued a Memorandum of Decision and Order on Defendants

Motion for New Trial (A-30) and on July 22,1999 the

defendant filed a Notice of Appeal of the denial of

his Motion for a New Trial. (A-36) on June 17,2002 the

defendant filed his Appeal from Judgment of the Superior

Court and from the denial of his Motion for New Trial.

The Prosecution filed their Rebuttal Breif in November

of 2002. The Appeal was argued on January 10,2003, by

Attorney Bernard Grossberg for the defense, and by Attorney

Massing for the Commonwealth. It was decided by the

S.J.C. on March 14,2003 that the judgments were affirmed.

## STATEMENT OF THE ISSUES

WHETHER THE MASSACHUSETTS APPEALS COURT DECISION WAS CONTRARY
TO, OR INVOLVED AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED
FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT WHEN DENYING
PETITIONERS ISSUE THAT THE JUDGE COMMITTED CONSTITUTIONAL
ERROR BY IMPLEMENTING AN UNPRECEDENTED NOTE-TAKING PROCEDURE
FOR ONLY THE LAST PORTION OF THE JURY INSTRUCTIONS.

WHETHER THE MASSACHUSETTS APPEALS DECISION WAS CONTRARY TO,
OR INVOLVED AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED
FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT WHEN DENYING
PETITIONERS ISSUE THAT THE DEFENDANTS RIGHTS TO A FUNDAMENTALLY
FAIR TRIAL AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL WERE
VIOLATED BY COUNSEL'S FAILURE TO OBJECT TO A PREJUDICAL
INSTRUCTION, FAILURE TO PRESENT THE TESTIMONY OF THE DEFENDANT
AND OTHERS, AND FAILURE TO MAKE A CLOSING ARGUMENT ON TWO
INDICTMENTS, AND CONCEDING THE DEFENDANTS GUILT.

WHETHER THE MASSACHUSETTS APPEALS DECISION WAS CONTRARY TO
OR INVOLVED AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED
FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT WHEN DENYING
PETITIONERS ISSUE THAT THE JUDGE COMMITTED ERROR BY CLOSING
THE COURTROOM DURING JURY                   INSTRUCTION WITHOUT
MAKING FINDINGS

-1-

## STATEMENT OF THE FACTS

Peabody Police Sergeant Edward Bettencourt testified that on June 2, 1996 at 12:45 am. He went to the Ledgewood Way Condominiums. (Tr. II-48-49) He walked into the adjacent wooded area and at the bottom of an embankment, he observed a partially naked white female with a cloth around her waist, massive head injuries and her genital area and breasts were exposed(Tr.II-55-56,57)

Cheryl Ann Parrott testified that in June of 1996 she had been working as an exotic dancer at the Golden Banana in Peabody (Tr.II-72-73,80) The dancers are paid salary, they retain their tips and are not discouraged from fraternizing with patrons.(Tr.II-80) Parrott worked a double shift on June 1,1996 because Saturday is a busy night.(Tr.II-73-74,83) Sometime after 8:00pm the defendant asked Parrott to have a drink with him and his friend.(Tr.II75-83) who did not try to conceal his identity and introduced himself as "Tim"(Tr.II 75-78) Parrott described the defendant as being very nice, very polite, not rude or crude and was very considerate. (Tr. II-77-79) Parrott observed the defendant drinking alcohol for approximately two and one half hours to three hours. (Tr. II-77-78)

Vicki Clifford who resided at Four Ledgewood Way, testified that after a dinner date on her birthday, she returned home at about 11:00 pm on June 1,1996, undressed took out her contact lenses (she was near sighted) and began reading. (Tr.V-31,33,34) From her

bedroom window, Clifford saw two people struggling against a white station wagon in the visitor parking lot. One person wearing something white(Tr.V-33-36) The two people were struggling for about 30 seconds when they fell to the ground(Tr.V-36-37) After switching windows(Tr. V-36-37) Clifford saw an individual walk across the parking lot and "deliver  4 or 5 very violent kicks to who ever was on the ground" "stood there, turned around and walked away"(Tr.V-38) At that point, Barry Flamm arrived and parked two rows in front of the people on the ground.(Tr. V-39-40) She last saw one of the two people trying to pull themselves up from the ground using the bushes. Flamm exited his car,and Clifford no longer saw any of the people(Tr. V38-41) Clifford returned to bed without calling the police(Tr.V-46)

Barry Flamm, lived at that location and he testified that he and a friend went out and he drove her home before returning to his apartment.(Tr.IV-4-6) As he parked he noticed two people behind his car in the bushes, one a male wearing a white shirt sort of laying on top of another person inside the tree line (Tr.IV 6-9,27-28) On the walkway Flamm noticed items strewn about. Mountain Dew, black High Hell shoes, and other items (Tr.IV-11,26) Flamm picked up the soda and went to his apartment. From his window Flamm noticed a silhouette of a person dragging another person by their arms towards an opening in the bushes down toward the train tracks. (Tr.IV-11-17) Flamm then saw a stocky man about 5' 10"

tall wearing navy blue shorts, black shoes, and a short
sleeved golf shirt emerge from the woods (Tr. IV-13-
14) The man man who emerged from the woods spoke with
a woman then moved his car into a visitor parking space.
(Tr. IV-15-46) Flamm then called condominium personnel
and although he was told to call the police, Flamm did
not do so and returned to the window instead.(Tr.IV
17-18) Flamm the saw Steven Bornstein, arrive with a
woman (Tr.IV 18-19, 40-43) The same man he had seen
earlier emerged from the woods again and spoke briefly
to Bornstein (Tr.IV 19,21,43) When that man stopped
talking to Bornstein he ran to his car, threw something
into the car and left (Tr.IV 21-22,24) Flamm went to
talk to Bornstein and noticed that the black high heel
shoes were missing.(Tr.IV-28)

Marcia Kalman, Steven Bornstein's mother testified
that her son drove her to a party after leaving her
car in the visitors parking lot (Tr. IV-47-48) Sometime
around 12:30 am when they returned to the Condominiums
Kalman heard "a crunching sound coming from the woods"
as she was pulling the car into the parking lot. (Tr.
IV-49-50, 66-67) After picking up some items from inside
her sons apartment; and on the way to her car she noticed
groceries, black platform high heel shoes, pink or chartreuse
sequined clothing and keys in a planted area near the
building (Tr. IV 50-52) Kalman also noticed a stocky
young man coming out of the woods walking towards her
car, wearing dark shorts , and a light shirt who was

-4-

looking on the ground. The man briefly talked to her
son. (Tr.IV 52-55,67-68) Kalman Identified John Keegan
as the man she Observed that night by a photograph (Tr.
IV 68-70)

Doris Waldman, an Assistant Vice President of the
Salem Five Cent Savings Bank, Testified that her bank
operates an ATM Machine at the Mobil Mart Convenience
store on Lowell Street Peabody. (Tr.III 3,4-5) On June
2,1996, The branch manager gave her a surveillance camera
and a blow up of sixteen individual photographs with
the time and date marked between 12:04 to 12:30 AM
(Tr.III 6-7,8-10)

Attorney Glen Yanco, General Manager and in house
counsel for Snaxin INC., owner of the Mobil Mart, testified
that there were two exterior surveillance cameras and
six cameras in the interior of the store. (Tr. III 12-
13,14) A video tape was introduced for the time between
12:10 AM and12:15 Am. On june 2,1996 during which time
Eric swindell was working (Tr.III 18-20) The register
tapes showing the victims purchases were also introduced
(Tr.III 21-23)

Eric Swindell an employee at the Mobil Mart went
outside around midnight for a cigarette. (Tr.III 24-
25,26) Two male customers arrive. One wearing khaki
colored pants and a dressy sweater. He had brownish/blonde
hair which was long and nicely combed. (Tr.III26) The
other man wore blue jeans and a white T-shirt. (Tr.III-
27) Swindell described Keegan as being older, heavier

in comparison to the younger and smaller defendant[2]

A regular customer arrived in a Ford Explorer and Swindell said,"Hi, Mrs. Crowley." (Tr.III 28-30) (Tr.III 46-88) Keegan, who was chewing tobacco from a Skoal can asked Swindell,"Do you know her?" Swindell replied," She comes in here all the time " (Tr.III 29-30,33,49) Keegan then said " I want a peice of that," to which Swindell replied "Good luck, she's married." (Tr.III-30) Keegan then "turned" to the defendant and said," She looks like the girl from the Banana" (Tr.III-30) The the defendant allegedly said " You know what we got to do,you know what we got to do," over and over at least ten times.[3] Swindell told Keegan that she was a stripper and then he walked the victim to her car. Keegan, with the defendant as a passenger, eventually drove out of the parking lot following the victim's car. (Tr.III-31-32,33,48,52-53) On video tape Swindell Identified Keegan, the defendant, the victim, and Keegans car at 12:04 Am (Tr.III 38,39,41) Swindell made a statement to a State Police Trooper and to a detective describing the defendant as being "really drunk", and that Keegan seemed more together than the defendant (Tr III 45,46,50-54)

---

2 In an answer stricken by the court, Swindell characterized Keegan as the leader (Tr.III-46)

3 This statement could not have been made by the defendant as the defendant never spoke to Swindell, or in his presence, and the surveillance tape showed that the defendant was in the car when Keegan and Swindell spoke.

-6-

Steven Bornstein, who resided at Four Ledewood Way
testified that he went to a party with his mother Marcia
Kalman (Tr. V-4,5-6) Sometime after midnight when his
mother drove him home to pick up her car, he saw a pair
of black high heel shoes, a set of keys,and groceries
near a walkway. (Tr.V-6-7,9)  After picking up items
inside his apartment that were his mothers Bornstein
accompanied his mother to her car, they spoke briefly
as she was pulling away. He then spoke briefly with
a man [ later identified as Keegan ] after speaking
briefly Bornstien turned around to go back into the
apartment, the man followed. Bornstien quickly shut
the security door and looked back to see the man in
the vestibule using the in-house phone. (Tr.V-9-14)
Bornstein then called the police.(Tr.V-14) After phoning
the police he then witnessed the man reach down in the
walkway area, then run diagonally across the parking
lot and drive off. (Tr.V-13,15-16,21-22) After the man
left the black high hell shoes were no longer there.
(Tt.V-16)

Angela Malagrifa, testified that in June of 1996
Kristen Crowley was her best friend and she had known
her for about 15 years. (Tr.V-46,47) Malagrifa explained
that the victim had a second job as an exotic dancer.
Malagrifa would accompany her to were she performed
to help with the money.On June 1,1996 she accompanied
her to a bachelor party. (Tr.v-48-49,52) Crowley was
wearing an ankle length black skirt, a green blazer

and her cousins black platform shoes.(Tr.V-49) She wore a pink sequined outfit while she performed; however, she did not wear the outfits panties because they were uncomfortable. The panties were in her hand or vehicle when she left Malagrifa. (Tr.V-52-53)

Joseph Connors, who lives on Goodale Street, testified that the Ledgewood Condominiums are on the other side of Lowell Street and that his home is approximately a ¼ of a mile from the Mobil Mart. (Tr-V 54-55,59-60) On June 2,1996, Connors went to a cul-de-sac about 500 yards from his home were he noticed a shoe on the ground (Tr.V-55-59) The following day after reading about the incident he returned and retrieved the shoe and delivered it to the police. (Tr.V-56-57)

State Police Trooper Walter Hanley, testified that in the early morning hours of June 2,1996, after photographing the scene and taking fingerprints from the victims' Ford Explorer he attempted to lift prints from a can of Beef-A-Roni, a bottle of water, a can of Skoal, a torn plastic bag found in the parking lot, two breath fresheners, two rocks and a in house telephone.(Tr.V 65,66-67-69-74,76-82,85,89) no prints were found on the rocks, Skoal can or the torn plastic bag. (Tr.V 67-77,82-83) The victim's prints were found on her Ford Explorer and the Beef-A-Roni can. (Tr.V-70-71) John Keegans prints were found on the in house phone at the entrance of Four Ledgewood Way. (Tr.V 71 73)

-8-

State Police Trooper Gary Mozuch testified he
and his partner Xanado, a German Shepard (Tr.VI-3-
4-8,9-10) On June 2,1996 shortly before 3:00 AM responded
to Four Ledgewood Way straight from home. (Tr.VI-
10-12,21) Where they began to search(Tr. VI-11-13)
Xando Followed the most recent scent. (Tr. VI-22-
23) The tracking proceeded along the railroad tracks,
across highway 114 before heading down a steep embankment
(Tr. VI-13-15) Xando tracked to an area near a Sunoco
gas station to a telephone booth and remained at
that location. (Tr.VI-15-17,17-21,23)

Danvers Police Officer Brian Casparian Testified
that on the morning of June 2,1996 he was patrolling
highway 114 where it intersected with Garden Street
and the railroad tracks. (Tr.VI-31-32,33) At approximately
2:40 AM on route 114 near the Sunoco gas station,
he noticed the defendant shirtless and talking on a
telephone booth (Tr. VI-34-35) He noticed that the
man had scratches on his back, his jeans were wet,
and he had a wet shirt in his hand. (Tr.VI-35,40-
41)

State Police Forensic Chemist Debra McKillop-
Shields, testified that there was no sperm or any
forensic evidence of rape from the swabs and slides
taken from the victims vaginal, rectal and oral cavities
(Tr.VII-3-4,65-66) Red brown stains areas on the defendants
jeans, underwear and white sweatshirt were sent to
theF.B.I. Laboratory(Tr.VII-57-59) rape kit and penile

swabs from the defendant tested negative for blood (Tr.VI65) And no forensic evidence of sexual assault was introduced.

Deborah Hobson, A forensic examiner in the DNA unit of the FBI. Laboratory testified that out of the five samples taken from the defendant's jeans, underpants and shirt, only the stain on the underpants matched the victims' DNA. (Tr.VIII-47,53,55)

Associate Chief Medical Examiner Gerald Feigin Testified that there was no indication of a sexual assault and no trauma to the victims external genitalia or interior vagina, in which he found a tampon during her autopsy. (Tr.IX-3-4,19-20) Death resulted from a number of blunt trauma blows to the head (Tr.IX-39-41)

Peabody Police Sergeant Robert Conway, testified that on June 2,1996, as a shift supervisor, at 3:00AM he came into contact with the defendant at the police station. (Tr.IX-51-52) The defendant had a strong odor of alcohol and was very unsteady on his feet and after SGT.Conway made a determination that he was intoxicated, he was placed in Protective Custody for his own safety.(Tr.IX-52-54)

State Police Sergeant John Garvin testified that at 3:30 AM he learned of Keegans name and address (Tr.IX57-58,61-64) Officer Garvin did not find Keegan at his fathers home when he searched his residence. (Tr.IX-70-73,78-79) At approximately 5:00PM, Keegan

surrendered through his attorney and during his booking

procedure, a can of Skoal was seized. (Tr.IX-74-79).

After the attorney provided the keys to Keegans car,

two additional cans of chewing tobacco were seized.

(Tr.VII-83) Neither the clothing that Keegan wore

when he surrendered.(Tr.IX-74-79), nor the clothing

that subsequent counsel gave to the police claiming

they were what Keegan wore on June 2,1996, matched

the clothing he wore in the Mobil Mart videotape.

(Tr.IX-87-91,66-67)

## ARGUMENT

**WHETHER THE MASSACHUSETTS APPEALS COURT DECISION
WAS CONTRARY TO, OR INVOLVED AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,
AS DETERMINED BY THE SUPREME COURT WHEN DENYING
PETITIONERS ISSUE THAT THE JUDGE COMMITTED
CONSTITUTIONAL ERROR BY IMPLEMENTING AN UNPRECEDENTED
NOTE-TAKING PROCEDURE FOR ONLY THE LAST PORTION
OF THE JURY INSTRUCTIONS.**

In this first degree murder trial, the trial

judge committed constitutional error and a fundamental

miscarriage of justice requiring the defendant be

afforded a new trial, and the judge abused his discretion

by implementing an unannounced, unrestricted and unbalanced

note-taking procedure after closing argument for only

the **last two-thirds of his instructions to the jury.**

Moreover, the jurors' respective notes were taken

into deliberations without appropriate instructions.

Indeed, without instructions of any nature at all.

There was no strategic or other reason for trial counsels'

failure to object to this procedure or for his failure
to request cautionary instructions, or for his failure
to request to inspect the juror's notes for accuracy
or other errors. This procedure violated the defendants'
rights to be present at the critical stage of his
trial when the jurors notes were re-read to the other
deliberating jurors; right to the effective assistance
of counsel; right to a fundamentally fair trial; and
right to due process and equal protection of the law
guaranteed him by Articles I,X,XI,XII and XXIX of
the Massachusetts Declaration of Rights, as well as,
by the Sixth and Fourteenth Amendments to the Constitution
of the United States.

### (A) The Arbitrary, Unrestricted And Unbalanced Note-taking Procedure.

The trial judge did not give the jury instructions
regarding note-taking during his preliminary instructions
to the jury.(Tr.I-10-13,15-17,21,23-27,39-40) Nor,
did the trial judge give the jury such instructions
during the course of the trial (Tr.II,III,IV,V,VI,VII
VIII,IX,X) or during final instructions. (Tr.XI-36-
155) Trial counsel was not forewarned during the trial
of the judge's intention to permit note-taking, nor
did the trial judge disclose his intention during
the charging conference (Tr.-6-10) or prior to closing
argument. At the outset of the trial, contrary to
his final instructions, the trial judge explicitly
informed the jury that note-taking would not be allowed.
(Tr.II-18-20) After closing argument, the trial judge

-12-

_sua_ _sponte_, implemented the following note-taking

procedure:

> THE COURT: Now, ladies and gentlemen, I
> want to tell you how my charge is going
> to be organized. **I am going to break it**
> **into two parts:** The first part deals with
> matters of general applicability which
> apply to most, if not all, criminal cases.
> And **the second part of the charge will deal**
> **with the substantive law of the indictments**
> which have been tried before you.
>
> I want you to understand that, sometimes,
> jurors ask me -- **as to the first part, you**
> **are going to be relying entirely on your**
> **memory. You will not have the benefit of**
> **any notes.** Prior to beginning the **substantive**
> **law** which relates to the indictments that
> have been tried here, I will have you stand,
> take a little stretch break, **and I will have**
> **the court officers distribute notebooks**
> **to you.** And you will be able to take notes
> as to the **substantive law** that applies to
> each of these indictments. Because the law
> is not always easily explained, not just
> to jurors, but also to attorneys and judges,
> I am going to allow you to use these notebooks
> **when and as you believe it would be helpful**
> **in making a notation reflecting what the**
> **status of the law is.**
>
> **You will not need to take down everything**
> **or even close to everything that I say,**
> at that point in time.
>
> Also, **you will not have a written transcript**
> **of these instructions with you,** when you
> are in the jury room. So, **use these notebooks**
> **in the manner you consider helpful.** But,
> above all, listen carefully to all of my
> instructions, both the part where you will
> not have the ability to take note, and the
> part where you will have the ability to
> take notes.
>
> **Don't be concerned with writing down**
> **what I say** so much as in listening to what
> I tell you **about the law.**
>
> (Tr.XI-36-37) (emphasis added)

Immediately after instructing the jury on the

province of the jury(Tr.XI-39), impartiality (Tr.XI-

-13-

39-40), inferences (Tr.IX-40-41) types of evidence
(Tr.XI-41-56) argument by counsel (Tr.XI-47-48),
consciousness of guilt (Tr.XI-56-57), voluntariness
of the defendants statements (Tr.XI-57-58), credibility
of witnesses (Tr.XI-60-64), prior inconsistent statements
(Tr.XI-65), the presumption of innocence (Tr.XI-66-
67) and the Commonwealth's burden of proof beyond a
reasonable doubt (Tr.XI-70), the trial judge informed
the jury that:

> Now ladies and gentlemen, that concludes
> the first part of my charge. And as I promised
> you, at this point, I am going to let you
> stand and let you take a brief stretch break.
> I just ask you not to speak with each other.
> I will have the court officer pass out to
> you notebooks and pencils on which **you may,
> if you wish, make notes of the substantive
> law**, of the particular indictments. And
> again I tell you, when I am instructing
> you on the **substantive law**, the important
> thing is to listen attentively to what I am saying.
> **You do not need to take down all or even a major
> portion of what I'm saying. But, to the extent that
> you wish to do so, you may make a note or two to
> assist you.**

> I am also going to have the court officer pass
> out to you copies of the verdict slips, which the
> foreperson will have in the jury room -- the original
> of which the foreperson will have in the jury room.
> And at the appropriate time in my instructions,
> I am going to direct you to the particular verdict
> slip for each particular indictment. I hope that
> it will assist you in understanding that law.

> You may stand now and take a break.
> ...
> THE COURT: The copies of the verdict slips,
> I ask you not to begin reading them, but to turn
> them over, face down; at the appropriate point in
> the charge, I will tell you to turn them over and
> look at them.

> Before we begin, **we will make sure that every
> juror has a notebook and something to write with.**
> Is there any juror that does not have a notebook
> or something to write with?

-14-

> **Okay, I want to turn to the substantive law of each of the indictments.**
> (Tr. XI-70-71) (emphasis added)

The instructions to the jury total 118 pages in length, (TR.XI-35-153) Although the trial judge did not allow notes to be taken on the first 34 pages of his instructions (Tr.XI-35-69), He allowed and made provisions for notes to be taken during the next 81 pages as to the **" substantive law"**. (Tr.XI-72-153) Moreover, the trial judge permitted the jurors unrestricted re-reading of the notes of their respective versions and/or translations of the court's instructions during the jury's deliberations by instructing the jury that, **"you may retain your notebooks... In the jury deliberations room..."**(Tr.XI-153) (emphasis added)

During the entire portion of the jury instructions on which the jurors were allowed to take notes and furnished the means to do so, neither of the fundamental principles of law, such as presumption of innocence, were repeated by the trial judge. (Tr.XI-38-69) In additipn, trial counsel failed to make a contemporaneous objection to the trial judge's surprise announcement to implement note-taking, nor did he voice objection to this procedure when invited to do so at the conclusion of the charge, nor did he request cautionary instructions guidelines as required by Rule 8A of the Superior Court Rules. (Tr.XI-153-154)

In contrast to not allowing and not affording

the jury the opportunity to take note during the
initial portion of the jury instructions and in
particular as to the fundamental principals of law
favorable to the defendant and on which he relied
on in closing argument, during the portion of his
instructions on which the jurors were allowed to
take notes, the trial judge continuously, repeatedly
and blatantly over-emphasized the Commonwealth's
theories as to the defendant's guilt. Using twenty
references to phrases such as, "I repeat," "again",
"I'll repeat that", "now again," "remember," "I remind
you;" "I again tell you" "and once again", (Tr.XI-73,
75,76,77,80,89,99,103,104,105,147,148,149), The principle
of joint venture was stated by the trial judge no
less than four distinct times (Tr.XI-73-84,88-90,
103-104,147-149). The trial judge repeated the elements
of aggravated rape eight times (Tr.XI-93,94,95,96,99,
100,102) and in regard thereto, repeated the two
theories of guilt on either liability as a principal
or a joint venturer, six times. (Tr.XI-73-75,92,102,
103-104,107) Apparently, to afford the jurors sufficent
time to record the **"substantive law"** in their notes,
the trial judge used the phrases, "let me repeat
that," and "the same law," while requoting the language
of GIL. ch.265,§1, four times (Tr.XI-109,110,140):
twice with the felony murder (Tr.IX-140) and twice
with the respect of deliberately premeditated and
cruel or atrocious murder. (Tr.IX-109-110) Utilizing

-16-

the phrase," Let me repeat these for you," the trial
judge stated the elements of felony murder five distinct
times (Tr.IX-141-142,143,145,146) Utilizing the phrase,
"let me repeat those," the trial judge stated the
elements of cruel and atrocious murder four distinct
times (Tr. IX-120-121,127); and utilizing the phrase,
"to summarize," the trial judge stated the elements
of deliberately premeditated murder three distinct
times. (Tr.IX-110-113,114-116,118).

In contrast to his over-emphasizing the Commonwealth's
theories of guilt, the trial judge gave the jury
only one brief instruction regarding insufficient
proof requiring a verdict of not guilty on the theory
of deliberately premeditated murder (Tr. IX-119);
only one brief instruction on insufficient proof
requiring a verdict of not guilty on the charge of
attempted aggravated rape (Tr.XI-107); only one circuitous
instruction that the Commonwealth's failure to prove
any one of the elements would require a finding that
the Commonwealth failed to prove the offense of first
degree murder under the theory of extreme atrocity
or cruelty (Tr.IX-128-129); and only one brief instruction
regarding insufficient proof requiring a verdict
of not guilty on the theory of felony murder (Tr.IX-
149)

> **(b)  The Arbitrary And Unequally Applied Note-
> taking Procedure Differs Materially From
> The Standard Note-taking Procedure Governed
> By Superior Court Rule 8A**

Note taking by jurors during the presentation of evidence has long history of approval in this Commonwealth, H.B. Zobel, The Boston Massacre, p. 271(1970); The Adams Papers: Legal Papers of John Adams. vol. 3, p.25, N.89(1965) Commonwealth v. Tucker, 189 Mass. 457,497(1905); Commonwealth v. Wilborne, 382 Mass. 241,253(1981), and in other jurisdictions. Taking And Use Of Trial Notes By Jury, 36 ALR 5th 255-375. Note-taking during jury instructions appears to have begun in this Commonwealth after Superior Court Rule 8A went into effect on May 6,1978. Commonwealth v. St. Germain, 381 Mass. 256,265-270, N.15(1980)

A Trial judge's discretionary authority to allow note taking is not without limit as Superior Court Rule 8A mandates that, "...the trial judge shall precede the announcement of permission to take notes with appropriate guidelines," Id (emphasis added) Rule 8A's requirements have been cited with approval for appropriate cautionary instructions when note-taking is allowed during jury instructions. Commonwealth v. St. Germain, Id. at 266. Under Rule 8A, cautionary instructions must be given by the trial judge, note-taking by jurors occurs during the entire instructions and most usually begins at the commencement of the evidence at the outset of the trial. The Rule makes no provision for note-taking of only selected portions of the jury instructions. The case at bar is unique and stands alone regarding the complete absence of

-18-

Cautionary instructions mandated by Superior Court
Rule 8A. (Tr.IX-36-37,70-71,153) The trial judge's
sua sponte and surprise decision to implement note-
taking for only the final two thirds of his instruction,
exacerbated the absence of cautionary instructions
as to the jurors' proper use of their notes. (Tr.IX
70-71)

Under Article XI of the Massachusetts Declaration
of Rights, the "right of equal justice", Murphy
v. Commissioner of the Department of Industrial
Accidents 415 Mass. 218,233(1993), is more explicitly
guaranteed in criminal prosecutions by the stronger
protections of Articles I,X,XII and XXIX of the
Declaration of rights, as explained in Commonwealth
v. Porter, 10 Met. (51 Mass.) 263,278-279(1845),
which held that, '" It is manifestly of greater importance
in order to effect such protections of the rights
of parties, that the laws to which they are amenable
shall be fixed and permanent, impartially applied
to all persons and cases alike, and not fluctuating
and variable." Id. The principles of equal protection
and equal application of the law have consistently
been held to require that the similarly situated
persons receive similar due process protections.
Commonwealth v. Angiulo, 415 Mass. 502,509 (1993);
Commonwealth v. Arment, 412 Mass. 55,57-63(1992);
Commonwealth v. Drunken, 356 Mass 503,507-509(1969)

-19-

Pursuant to the Fourteenth Amendment's Equal
Protection Clause, it has also been held that,
" When the law lays an unequal hand on those who
have committed intrinsically the same quality of
offense ... it has made as invidious a discrimination
as if it had selected a particular race or nationality
for oppressive treatment"' Skinner v. Oklahoma,
316 U.S. 535,541(1942) and this principle pertains
when procedural due process requirements are unequally
applied. Jackson v,Indiana, 406 U.S. 715,724,729-
730(1972). In this vein, the defendant enjoyed a
right under the Equal Protection Clause that the
Rule 8A cautionary instruction guidelines as held
by Commonwealth v. St. Germain, supra at 266, be
given to this jury because, " Justice must be evenhanded".
Johnson v. Arizona, 462 F.2d 1352,1354 (9th Cir.1972);
Myers v. Ylst, 897 F.2d 417,421-423(9th Cir. 1990);
Flore v. White, 920 U.S. 23,120 S.Ct. 469 (2000).
This principle applies similarly to the unequal
and unrestricted procedure of not allowing note-
taking except for the final two-thirds of the jury
instructions, and creates a miscarriage of justice,
when such an anomaly is contrasted with notetaking
for the entire trial and/or for the entire jury
instructions afforded in all other trials in this
Commonwealth. Flore v.White, supra; Commonwealth
V. Porter, supra.

(c)    **The Trial Judge's Failure To Give**
       **The Jury Proper Cautionary Instructions**
       **Constituted A Clear Abuse Of Discretion**


The trial judge's failure to give the jury proper

cautionary instructions (Tr.IX-36-37,70-71,153),

violated the fundamental principle that a judge

has no discretion to disregard or to otherwise

contravene by an act or an omission, any rule of

court which uses the mandatory term "shall" <u>Torres</u>

<u>v. Attorney General</u>, 391 Mass. 1,13-14(1984), <u>Cabral</u>

<u>v. Sullivan</u>, 961 F.2d 998,1001-1003(1st Cir.1992)

and constituted a clear abuse of discretion. The

trial judge also abused his discretion by failing

to comply with the cautionary instruction guideline

requirements of Superior Court Rule 8A which States

that:

**Rule 8A**
**NOTES BY JURORS**
(Applicable to all cases)

> **In any case** where the court, in its discretion,
> permits jurors to make written notes concerning testimony
> and other evidence, **the trial judge shall precede**
> **the announcement of permission to make notes with**
> **appropriate guidelines.** upon the recording of the
> verdict of verdicts, the notes of the jurors shall
> be destroyed by direction of the trial judge, **Jurors**
> **may also be granted permission by the trial judge**
> **to make notes during** summation by counsel and **during**
> **the judge's instructions** to the jury on the laws.
> (Effective May 5,1978)
> (emphasis added)


The Rule's explicit use of the mandatory word

" shall" imposed a non-discretionary duty on the

trial judge. <u>Hashim v. Kalil</u>, 388 Mass, 607(1988)

-21-

It may have been argued that since the Rule's clause
on note-taking of instructions is separate from the
balance of the Rule regarding note-taking, the trial
judge had discretion not to give appropriate guidelines
to the jury. The  Court's ruling however, in Commonwealth
v. St Germain, supra at 266, makes it beyond refute
that the "appropriate guidelines" requirement of
Rule 8A also applies to note-taking during jury instructions.
The holding also indicates, "...a need to modify...
the procedures now specified in rule 8A," Commonwealth
v. St. Germain, supra at 269, to explicitly direct
judges to give proper cautionary instructions for
note-taking during a jury charge or to eliminate
such note-taking based on the extreme risk of prejudice
recognized by numerous state and federal courts arising
from incorrect translation or even one-word of the
jury instructions reduced to written form. Written
Instructions With A Criminal Jury, 91ALR 3rd,382-
414; Morris v. Woodford, 273 F.3d 826,837-843(9th
Cir. 2001).

    In this Commonwealth, only in cases in which the
required cautionary instructions or appropriate guidelines
were given to the jury, have convictions been affirmed.
Commonwealth v. St. Germain, supra at 266 (Each juror's
notes,"...the judge stressed were to serve only as
the notes of the individual juror,"); Commonwealth
v. Wilborne, supra at 253 (the jury was further instructed

to use their notes only to refresh their memories,
not as authority to persuade fellow jurors.");
United States v. Porter, 764 F.2d 1,12(1st Cir.1985)
("...the record shows the painstaking care the judge
displayed when he instructed the jurors on their
note-taking."); United States v. Oppon, 863 F.2d
141,148(1st Cir 1998) ("At the close of the evidence
the court instructed the jury on the proper use
of notes during deliberations."). In other jurisdictions,
the trial judges cautionary instructions governing
jury note-taking is the most crucial factor considered
in analyzing the legal propriety of the note-taking
procedure. Taking And Use Of Trial Notes By Jury,
36 ALR 5th, 255,Johnson v. State,887 S.W.2d 957
(Texas,Cr. App.1994); People v, Tucker, 550 N.Y.S.
2d 1 (A.D. 1 Dept. 1990); People v.Valenti,559 N.Y.S.
2d 666 (A.D. 2 Dept. 1990); State v.Triplett, 421
S.E.2d 511 (W.VA1992) 187 W,VA 760 (1992); People
v Sundquist,572 N.Y.S. 2d 410 (A.D. 3 Dept. 1991)
The defendants were afforded a new trials in People
v. Saunders, 467 N.Y.S. 2d 110 (Sup.1983) and Sligar
v. Barlett, 916 F.2d 1383 (Oklahoma 1996), as no
cautionary instructions were given by the trial
judge on the use of notes taken by jurors into their
deliberations. Error was found where, as here, the
trial judge left it to the jury to select which
portions of the charge each individual juror determined

-23-

were necessary to take notes on. <u>Bolm v Triumph
Corp.</u>, 397 N.Y.S. 2d 498,58A.D. 2d 1014, (1977)
reversed on other grounds, 422 N.Y.S. 2d 969, 71
A.D. 2d 429 (4 Dept. 1979). Insufficient cautionary
instructions regarding note-taking during jury instructions
was held to be error because the instructions did
not dissipate the potential for prejudice in <u>People
v. Sullivan</u>, 559 N.Y.S. 2d 881, (A.D. 1 Dept. 1990)
160 A.D.  2d 161 (1st Dept. 1990). In a situation
in which the trial judge fails to remind jurors
through a cautionary instruction that their notes
on the jury charge are only for their individual
personal use, a defendant is deprived of his constitutional
right to a fundamentally fair trial and reversal
of the conviction is the appropriate remedy. <u>People
v. Morales</u>, 559 N.Y.S. 2d 869 (A.D. 1 Dept. 1990)
159 A.D. 2d 86 (1st Dept. 1990); <u>People v. Morales</u>
562 N.Y.S. 2d 380 (1990); 165 A.D. 2d 725 (1990).

    **(d)   The Trial Judge's Allowance Of Unrestricted Note-
taking Of The Jury Instructions To Be Utilized
During Deliberations Constituted Clear Abuse Of
The Court's Discretion And Was Unconstitutional
As Applied**

An automatic reversal of a criminal conviction
is required when the record reveals "structural
defects in the constitution of the trial mechanism
which defy analysis by 'harmless error' standards".

-24-

<u>Arizona v. Fulminante</u>, 499 U.S. 279,309 (1991),

The plain language of Superior Court Rule 8A does not require specific restrictive cautionary instructions for note-taking regarding jury instructions (third sentence); the Rule mandates that jury notes be destroyed immediately once the verdict has been returned (second sentence); the Rule does not prohibit jurors orally re-reading translated notes of the instructions out of the defendant's presence during deliberations and it does not require or permit counsel or the defendant to inspect any such notes of the jury charge for accuracy prior to their re-reading or other consideration during jury deliberations. Given the fact that the Rule requires automatic destruction of the essential appellate record, to wit, the juror's notes, after return of the verdict and does not permit inspection prior to the verdict, the defendant contends that if the court holds that the trial judge's abuse of his discretion amounted to error, the Court must find that such a defect in the trial mechanism defies a harmless error analysis because of the absence of the notes and therefore, falls within the category of structural error that requires automatic reversal of the defendant's convictions.

The trial judge's instruction to the jurors to rely on their memory for the first third of his instructions (Tr.IX-36), while concomitantly informing the jurors that,"You will not need to take down

-25-

everything or even close to everything that I say,.."
(Tr. IX-37), "You do not need to take down all or
even a major portion of what I'm saying," (Tr. IX-
70) "... use these notebooks when and as you believe
it would be helpful in making a notation reflecting
what the status of the law is," (Tr. IX-37) "...You
will not have a written transcript of these
instructions with you, when you are in the jury room.
So, use these notebooks in the manner you consider
helpful (Tr. IX-37), "Don't be concerned with writing
down what I say so much as in listening to what I
tell you about the law" (Tr.IX-37);"...to the extent
that you wish to do so, you make a note or two to
assist you" (Tr.IX-70); on the "substantive law"
(Tr. IX-36-37,70-71), constituted a "complete
abdication of judical conrtol over the process".
Riley v. Deeds, 56 f.3d 1117,1121 (9th Cir.1995);
United States v. Noushfar, 78 F.3d 1442, 1445 (9th
Cir. 1996)  This procedure also created an
unconstitutional risk that the jurors' respective
translations or interpretations as reflected in their
notes of the instructions on the elements of the
offenses would be orally read to the other jurors
without the defendant and/or counsel being present
in an incorrect form that the trial judge had not
instructed the jury. Guam v. Marquez, 963 F.2d 1311,
1314-1316 (9th Cir. 1992); United States v. Noushfar,
supra at 1444-1446; United States v. Noble, 155 F.2d
315, 318 (3rd Cir. 1946). The inherent risk of the

unreliability of the juror notes on jury instructions
has been recognized and the absence of guarantees
that jurors would record instructions completely and
accurately has been held to require reversal. People
v. Morales, supra, People v. Tucker, supra People
v. Anderson, 542 N.Y.S. 2d 592 (A.D. 1 Dept. 1989),
151 A.D. 2d 335(1989). In situations in which neither
the defendant nor trial counsel were allowed to inspect
written instructions, based on jurors' notes, citing
Rushen v. Spain, 464 U.S. 114,117(1983), the defendant
was denied of the right to be present at all critical
stages of the proceedings, as the Court recognized
state "trial error" in Warner v. Zent,997 F.2d 116,
131(6th Cir. 1993) in concluding that,"...if the error
had occured in a federal court, it might be arguable-
although we obviously do not decide the point- that
 reversal on appeal would be virtually automatic,
regardless of whether the defendant could show that
the errors caused any significant prejudice". Id

       In the instant case, where there was no inspection
of the jurors' notes prior to deliberation or otherwise
and the trial judge's instructions directed the jurors
not to record everything that he said during the
instructions, but rather to only record one or two
things that the individual jurors felt were important,
the procedure violated the Court's specific requirement
that, "...written instructions... should be an exact
reproduction of the judge's oral charge," Commonwealth
v. Lavalley, 410 Mass. 641,652,N.15(1991), cited with

approval in Commonwealth v. DiBenedetto, 427 Mass.
414,422(1998), of Commonwealth V Martin, 424 Mass.
301,312,N.5(1997) (approved procedure where "the
written instructions were verbatim of the Court's
oral instructions"). The unbalanced and unrestricted
note-taking procedure here falls within the category
of cases where,"...it has been established that by
allowing note into deliberations, the court is
permitting the best note taker to dominate the
deliberative process and thereby putting too much
emphasis on the notes to the detriment of the indepen-
dent recollections of all the jurors". Clemmons v.
Sowders, 34 F.3d 352,357(6th Cir. 1994) Clearly, in
the same vein, the trial judge's repeating the theories
of joint venture and repeating the elements of the
offenses, Commonwealth  v. Santos, 402 Mass 775 (1988),
in combination with unguided and unrestricted note-
taking and no opportunity to take notes during the
first third of the  charge, which was most favorable
to the defendant, conclusively shows that,"...the
jury had the opportunity to give more consideration
to separate portions of the charge rather than the
total charge". United States v. Schilleci, 545 F.2d
519,524 (5th Cir. 1977); Cornett v. State, 436 N.E.
2d 765,766 (Indiana 1982) (discussing compound errors
for written instructions unpurged information that
might have caused the jurors to speculate upon the
relative importance of any particular instruction")

    By allowing the jurors to act as individual

recorders or stenographers charged with transcribing
the oral instructions, the trial judge in effect,
introduced into the jury's deliberations and allowed
the deliberation to be governed by unknown translation
of the instructions and unknown versions of the meaning
of the instructions or of certain passages or words
depending on the individual juror's level of education
sophistication and intelligence or the unknown textual
references by which the individual jurors attempted
to copy portions of the instructions. Gibson v. Clanon,
633 F.2d 851,852-855(9th Cir. 1980) Individual inter-
pretation or misinterpretation by twelve different
lay stenographers does not satisfy the fundamental
requirements of equally and evenly applied, fixed
and permanent laws guaranteed the defendant by Articles
I,X,XI,XII and XXIX of the Massachusetts Declaration
of Rights. Commonwealth v. Porter,supra at 278-279.
The great risk of a miscarriage of justice inherent
in the procedure instituted by the trial judge here,
is illustrated by the holding in Morris v. Woodford,
supra at 837-843, which vacated a death penalty soley
on a three letter typographical error in written
instructions which was not noticed by counsel or the
court, but which changed the word "without" to "with".
Id

     The trial judge's continuing reference in the
last two thirds of the instructions to the term
"substantive law" six times (Tr.IX-26-27,70-71),
exacerbated the prejudice to the defendant as it,

"...contained a negative pregnant as well," Cool v.
United States, 409 U.S. 100,102-103,n.3(1972), that
implied,"...the first part deal(ing) with matters
of general applicability" (Tr. IX-36), equalled
something less than "substantive law". Lanigan v.
Maloney, 853 F.2d 40(1st Cir. 1988). This bifurcation
trivialized and belittled the prior presumption of
innocence and proof beyond a reasonable doubt instruc-
tions by relegating these primal concepts to something
less than "substantive law", which had added the effect
of unconstitutionally reducing the Commonwealth's
burden of proof by making these legal priciples, less
important and less worthy of distinct clarity in the
jurors' notes and minds during deliberations, Common-
wealth v Repoza, 400 Mass. 516(1987); Commonwealth
v. Lennon, 399 Mass. 443(1987); Commonwealth v. Mulica
401 Mass.812 (1988); Commonwealth v. Skinner, 408
Mass. 88 (1990), because the trial judge's "...lightest
word or intimation is received deference and may prove
controlling". Quercia v. United States, 289 U.S. 466,
470(1933). Moreover,"human experience teaches that
people frequently give special credence to the written
word, cf. e.g., Job 19:23, (" Oh that my word were
now written")...(and when) a fragment of the charge
in written form (is presented during deliberations),
the danger of over-emphasis is acute". United States
v. Parent, 954 F.2d 23,26(1st Cir 1992)

The trial judge's repeated emphasis on the Commonwealth's theories of the defendant's guilt and the unnecessary repeated distinction between the "substantive law" and by inference, the "non substantive law", resulted in a situation,"...when judicial comment has exceeded fair guidance and attempted to lead the jury to a particular verdict, the comment carries a high risk that it influenced the jury". Traynor, The Riddle Of Harmless Error, at 71-72(1970), cited in Anderson v. Warden, 696 F.2d 296,301-302,N.1(4th Cir. 1982 en banc) By not providing

--

_____

4    See also, Payne v. State, 395 So.2d 284 (Fla. App. (1981) (partial
     written instructions on premeditated murder constituted reversal error);
     State v. McCloud, 349 N.W.2d 590(Minn. App. 1984) (partial inst-
     ructions in written form on substantive charges, but not
     on defense, held to be error as instruction procedure
     was unbalanced); People v. Hill, 519 N.Y.S. 2d 549,133
     A.D.2.d 56(1987)(criticizing portion of written instruc-
     tions on substantive offenses only); People v Westergren,
     520 N.Y.S. 2d 774,134 (A.D.1 Dept.1987)2d 186(1987)
     (criticizing written portions of charge only on "the
     statutory law of the case"); People v Valle, 531 N.Y.S.
     2d929 (A.D.2 Dept.1988),143 A.D. 2d 160(1980)
     (criticizing elements of offense submitted to jury in
     written form); Zarattini v State., 571 So.2d 553 (Fla.
     App.4,Dsit.1990) (error to submit partial and not entire
     jury instructions in written form); Commonwealth v. Byrd,
     598 A.2d 1011 (PA.Super.1991)(finding prejudice from sub-
     mitting elements of offense in written form to jury);
     Grimes v State, 404 S.E.2d 324(GA.App.1991), 199 GA App
     152 (1991)(error to submit partial excerpts of written
     instructions to jury); People v Sotomayer, 569 N.Y.S.
     2d 973,(A.D.2 Dept 1991)173 A.D. 3rd 500(1991)
     (criticizing partial written instruction); People v
     Johnson, 584 N.Y.S. 2d 32, (A.D. 1 Dept.1992)185 A.D.
     613 (1992)(finding prejudice from written elements of
     offenses being submitted to jury).

judicially controlled written instruction guidelines, but rather placing his thumb on the scales of justice througha procedure that"...gave the jury a one sided view of the case", <u>United States v Van Dyke</u>, 14 f.3d 415,423(8th Cir.1994), the trial judge committed prejudicial error which requires that the defendant be afforded a new trial.

> (e) **Trial Counsel's Failure To Request Appropriate Guidelines And/Or Cautionary Instruction, Failure To Object To The Unbalanced And Unrestricted Instructions And Failure To Request Inspection And/Or Preservation Of The Jurors' Notes Constituted Ineffective Assistant Of Counsel**

In this Commonwealth, note-taking by jurors must be preceded by the trial judge giving the jury appropriate guidelines and/or cautionary instructions as to how their notes may be utilized. Superior Court Rule 8A, <u>Commonwealth v. ST. Germain</u>, <u>supra</u> at 265-266,N.15,16,17; <u>Commonwealth v. Wilborne</u>, <u>supra</u> at 253. It is equally well settled that this is the procedure to be followed in the district courts for the First Circuit. <u>United States v Porter</u>, <u>supra</u> at 12; <u>United States v. Oppon</u>, <u>supra</u> at 148. There were no such guidelines or instructions in the instant case and trial counsel voiced no objection to the note-taking procedure and failed to request appropriate guide-lines or cautionary instructions, failed to object to the unbalanced and unrestricted instructions and failed to request inspection and preservation of the jurors' notes. There fore, the question arises as to whether trial counsel's omissions were strategic or whether,"..his silence arose from incompetence and ignorance of the law, rather than strategy". <u>Washington v Hofbauer</u>, 228 F.3d

689,704(6th Cir. 2000).

The record demonstrates that there was no strategic
reason for trial counsel's failure to request that in
accordance with  Superior Court Rule 8A, that the trial
judge give the jury appropriate guidelines regarding their
note-taking (Tr.IX-36-37,70-71,153-156), White v McAninch,
235 f.3d 988,997-999(6th Cir.2000), especially in this
case based on circumstancial evidence with alternative
suspects. Commonwealth v Salemme, 395 Mass. 594(1985),
Commonwealth v Mazza 399 Mass. 395(1987). " Failure to
make the request was highly prejudicial to the (defendant)
to the extent that the fundamental fairness of the
proceeding and the conviction was undermined...(resulting
in) a denial of a fair trial". Freeman v Class, 95 F.3d
639,642(8th Cir.1996); Commonwealth v Gelpi, 416 Mass.
729,730-731(1994); Commonwealth v Peloquin, 52 Mass.App.
Ct.480(2001). Counsel's omission also prejudiced the
defendant by placing him at risk of a stricter miscarriage
of justice standard of appellate review,Commonwealth v.
Fernandes, 427 Mass.90(1998) and at risk of later losing
federal habeus corpus review pursuant to 28 U.S.C.§2254,
if the defendant is not relieved of the procedural bar.
Puleio v. Vose,830 F.2d 1197(1st Cir. 1987); Murray v.
Carrier, 477 U.S. 478(1986). The trial counsel's additional
failure to object to the trial judge's instituting note-
taking for only the last two thirds of the instructions
and failure to object to the unrestricted and unvalanced
instruction, resulted in a complete breakdown of the
adversarial testing process that the criminal justice

system relies on to produce just results. <u>Strickland v.</u>
<u>Washington</u>, 466 U.S.668,696(1984).

Trial counsels failure to object to the note-taking
procedure, amounted to constitutionally deficient and
prejudicial ineffective assistance of trial counsel. <u>Lucas</u>
<u>v. O'dea</u>, 179 F.3d 412(6th Cir.1999); <u>Oyola v. Bowers</u>,
947 F.2d 928,930-933(11th Cir. 1991); <u>Corsa v Anderson</u>,
443 F.Supp. 176,178(E.D. Mich. S.D.1977). See also,
<u>Commonwealth v. Karaffa</u>, 709 A.2d 887,889-890(pa. 1998)
("counsel was inneffective for failing to object to the
use of written instructions because" a jury would likely
assess undue weight to the points of law in written inst-
ructions and possibly misinterpret or missapply the law,
as well as, giving"...undue emphasis to portions of the
charge(which) has the potential of undermining the
integrity of the deliberation process".) Note-taking
during the charges personifies the danger of,"...written
instructions(which) is intrinsically prejudicial and it
is this intrinsic, unfair prejudice that requires granting
a new trial". <u>Id</u>.at 890.

It must also be noted, however, that the suprise
announcement after argument that the trial judge intended
to institute a note-taking procedure for a portion of
the jury instructions (Tr.IX-36-37), Denied trial counsel
an opportunity to argue against the proposed procedure
at the charging conference held pursuant to Mass.R.Crim.P
24(Tr.X-3-10),Which served to deprive the defendant of
his right to the effective assistance of counsel, <u>Conde</u>
<u>v. Henry</u>, 198 F.3d 734,739(9th Cir. 1999) and made a post

-34-

implementation objection to the procedure futile.
The surprise implementation of the note-taking procedure
falls under the narrow exception excusing the failure
of counsel to make a contemporaneous objection. <u>Taking</u>
<u>And Use Of Trial Notes By Jury</u>, <u>supra</u>, 36 ALR 5th
at 285. "Where (as here) the trial judge, <u>sua sponte</u>
and without specifically affording the parties a chance
to object, permitted the jury to take notes during
the trial although no juror requested to do so,"
the Court in <u>State v. Waddell</u>, 498 N.E.2d 195(Ohio
App. 1985), 26 Ohio App. 3d 33, held that note-taking
constituted reversal error. The Court stressed that
the trial judge made it clear that counsel's objection
would be fruitless since the judge had already made
the determination to permit note-taking and the court
therefore found that no objection was required. <u>Id</u>
In the instant case, the trial judge discussed other
areas of the verdict forms (Tr.VIII-9-10), stated
that the instructions he discussed covered "the essence
of what we addressed... in the lobby conference. If
I've left anything out..."(Tr.VIII-8) advise the Court.
Neither the prosecutor nor trial counsel mentioned
the Courts intention to institute note-taking of two
thirds of the instructions as a lobby conference issue
not raised at the recorded charge conference.(Tr.X-
3-10)

Furthermore, the trial judge's preliminary instructions
indicate that counsel was misled and that if the trial
judge intended to utilize note-taking for only the
jury instructions, he concealed his intention when
he made the following reference to note taking at
the outset of the trial:

> The remarks I make at this time are
> not a substitute for more-detailed instructions
> on the law, which I will give to you at
> the conclusion of the trial before you
> retire to consider your verdict.
> Now the first thing that I want to impress
> upon you is the fact that you are going
> to be listening and observing the witness
> and the evidence. **You are not going to
> be taking notes. You will not have the
> benefit of notes of testimony,** when you
> go into the jury deliberation room. Neither
> will you have with you excerpts from testimony
> read back to you in the jury room. It is
> very important, now, because you only get
> the opportunity to hear the witnesses,
> once. Jurors  sometimes ask me if they
> can have a portion of the testimony read
> back to them. And I tell you, now, that's
> not going to happen. (Tr.II-18-19) (emphasis
> added)

> You have just heard the clerk read the
> indictments. The indictments are in statutory
> form and have a particular language. I
> ask you not to assume that you know **what
> the legal elements** are that make up those
> indictments. **I will instruct you, in detail,
> at the conclusion of trial on the elements
> of the law which make up these indictments....**
> (Tr.II-20)(emphasis added)

The trial judge's preliminary instructionsións
in combination with his comment at the outset of his
final instructions that jurors sometimes ask questions
about note-taking procedures during the instructions
(Tr.IX-36), supports the inference that the trial
judges routinely implemented partial note-taking procedures

and concealed this fact from the trial counsel at the commencement of trial, through the charging conference and closing argument.

Trial counsel should have moved to inspect the jurors' written versions of the instructions which were to be taken into and relied upon in their deliberations. In Warner v. Zent, supra at 131, the reviewing court's comparison of "the transcript of the oral instructions given in open court and the written version set forth in the joint appendix," resulted in a harmless error finding because that the court was,"...satified that there are no prejudicial discrepancies" Id. at 131. Consequently, when faced with the unbalanced and unrestricted note taking procedure here, trial counsel after objecting to the procedure, should have also moved to inspect the jurors' notes for accuracy and/or discrepancies, Morris v. Woodford, supra at 837-843, and requested that the notes be preserved for appellate review. If the Court insisted on destroying the notes, counsel should have challenged that ruling and Rule 8A as being unconstitutional because destruction of the notes makes appellate harmless error review impossible. Trial counsel's failure to inspect and preserve the jurors' notes eviscerated the defendants ability to demonstrate prejudice and the destruction of the record further supports the court should have ordered the defendant a new trial, see, Commonwealth v.Harris, 387 Mass. 758,759-763,766-767(1982) as his right to effective assistance of counsel was violated.

The defendants convictions must be reversed.

II. **WHETHER THE MASSACHUSETTE APPEALS DECISION WAS
CONTARY TO, OR INVOLVED AN UNREASONABLE APPLICATION
OF CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED
BY THE SUPREME COURT WHEN DENYING PETITIONERS ISSUE
THAT THE DEFENDANTS RIGHTS TO A FUNDAMENTALLY FAIR
TRIAL AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL
WERE VIOLATED BY THE COUNSEL'S FAILURE TO OBJECT
TO A PREJUDICAL INSTRUCTION, FAILURE TO PRESENT
THE TESTIMONY OF THE DEFENDANT AND OTHERS, AND
FAILURE TO MAKE A CLOSING ARGUMENT ON TWO
INDICTMENTS, AND CONCEDING THE DEFENDANTS GUILT.**

In addition to failing to object to a prejudicial
instruction which invaded the province of the jury, trial
counsel's failure to present a full intoxication defense,
failure to present the testimony of the defendant to
support his intoxication and other perpetrator defenses,
failure to make a closing argument on two indictments
and conceding the defendants guilt on a third indictment,
and failure to call forth support testimony from others,
violated the defendant's rights to a fundamentally fair
trial and to the effective assistance of counsel guaran-
teed him by Article XII of the Massachusetts Declaration
of Rights, as well as, by the Sixth and Fourteenth
Amendments to the Constitution of the United States.

The unbalanced instructions on the Commonwealth's
theories of the defendant's guilt in combination with
prejudicial flaws in the charge, trial counsel's non-
strategic failure to present a full intoxication defense
and the defendants testimony, as well as, trial counsel's
purported closing argument, requires a cumulative error
analysis. Commonwealth v. Cancel, 394 Mass. 567(1985);
Commonwealth v. Bassett, 21 Mass.App.Ct. 713(1986);

-38-

Commonwealth v. Skinner, supra at 88; Commonwealth v.
Licata, 412 Mass 654,660-662(1992); Commonwealth v. Farley,
432 Mass. 153,156-157(2000); Rodriquez v. Hoke, 928 F.2d
534,538(2nd Cir. 1991); United States v. Gray, 878 F.2d
702,708-713(3rd Cir. 1989); Berryman v. Morton, 100 F.3d
1089,1095-1102(3rd Cir. 1996);Griffen v. Warden, 970 F.2d
1355,1357-1358(4th Cir. 1992); Moore v. Johnson, 194 F.3d
586,622(5th Cir. 1999); Blackburn v. Foltz, 828 F.2d 1177,
1186(6th Cir. 1987); Cooper v. Sowders, 837 F.2d 284,
288(6th Cir. 1988(;  Williams v. Washington, 59 F.3d 673,
682(7th Cir. 1995); United States v Beckman, 222 F.3d
512,524-527(8th Cir. 2000), United States v. Sanchez,
176 F.3d 1214,1218-1225(9th Cir. 1999); Mahorney v.
Wallman, 917 F.2d 469,473 N.3,474(10th Cir. 1990); United
States v. Hanos, 184 F.3d 1324,1334(11th Cir. 1999).
Since trial counsel failed to object,  this Court must
find that a, "substantial risk of a miscarriage of justice
exists  where  that  Court  would have unanimously ordered
a new trial if an exception had been saved". Commonwealth
v. Alphas, supra at 13, N.6.


                (a)    Instructional Error Eviscerated The
                       Defendant's Other Perpetrator Defense
                       And Trial Counsel Had No Strategic Reason
                       For Failing To Object

        During the course of the trial, counsel was not
notified that the evidence adduced showing that the co-
defendant was the leader and principal, could be held
at a later stage of the trial to be irrelevant. At the
charging conference, during the discussion regarding

principal and joint venture liability, no warning was
given by the trial judge to trial counsel that his other
perpretrator defense theory was irrelevent. (Tr. X-6-10)
Pursuant to the reasonable understanding that it was
relevant, trial counsel devoted the entire last third
of his closing argument to an other "perpretrator defense"
that the victim was murdered by co-defendant,John Keegan,
as the pricipal. Or the defendant was a less culpable
accessory in a joint venture on the other indictments.
(tr. XI-15-20)

The Commonwealth did not indict the defendant under
a joint venture murder theory and therefore, he was tried
soley as the principal in the murder, Lucas v. O'dea,
supra at 417; Watson v. Jago, 558 F.2d 330,334-339(6th
Cir. 1977(, and consequently, that John Keegan was the
sole principal perpretrator was extremely relevant,
Commonwealth v. Graziano, 368 Mass. 325,329-330(1975);
Miller v. Angliker, 848 F.2d 1312,1323(2nd Cir.1988);
Henderson v. Sargent , 926 F.2d 706,708,N.3,710-712(8th
Cir. 1991) grant of writ on rehearing, 939 F.2d 586(8th
Cir. 1991); Jones v. Wood, 207 F.3d 557,560-563(9th Cir.
2000); Bowen v. Maynard, 799 F.2d 593,611-613(10th Cir.
1986); Troedel v. Wainwright, 667 F.Supp.1456,1457-1464
(S.D.FLA 1986) grant of writ affirmed 828 F.2d 670(11th
Cir. 1987); Kyles v. Whitley, 514 U.S. 419(1995);
especially where the jury had to choose between two
possible principals at the murder scene. Commonwealth
v. Salemme, supra; Troedel v Wainwright, supra; Chambers
v. Mississippi, 410 U.S. 284 (1972), Lucas v.O'Dea, supra

at 417.

Constitutional error occurs if,"... there is a
reasonable likelihood that the jury has applied the
challenged instruction in a way that prevents the
consideration of constitutionally relevent evidence". Boyde
v. California 494 U.S. 370, 380(1990); Brecht v. Coleman,
525 U.S. 141, 145-146(1998). In the instant case. the trial
judge instructed the jurors that:

> To begin with, an individual cannot be both
> a principal and a joint venturer at the same time,
> in the commission of the exact same crime in the
> exact same way. **There can be more than a single
> principal** in the commission of a particular crime,
> however. **When an individual, such as Timothy Dykens,
> is alleged to be a principal,** the Commonwealth
> alleges that he, himself, performed the essential
> elements of the particular crime. **Whether someone
> else may have been a principal is irrelevant to
> this trial.** (Tr.XI-74)(emphasis added)

The trial judge repeated two additional times that,
"...there can be two principals to a crime"(tr.XI-88,
104), although"dual principal liability theory" was
not relevant to this case, Commonwealth v. Lamrini,
392 Mass. 427,434-435(1984) and could serve to lesson
the jury's consideration of the defendant's defenses.
Because the jurors had been repeatedly instructed to
take notes on the substantive law (Tr,XI-70-71) only
moments before the trial judge informed them that,"...
when an individual, such as Timothy Dykens, is alleged
to be a principal... whether someone else may have been
a principal is irrelevant to this trial,"(Tr.XI-74),
it cannot be asserted that the jurors did not record

this instruction or adopt it during deliberations and restate it to the other jurors.

The defendant's defense and closing argument focusing on John Keegan was highly relevant,"...as such as evidence (was) central to (the defendants) claim of innocence," Crane v. Kentucky, 476 U.S. 683,690(1986), and was at,".. .at (the) heart of the right to present a defense," Pettijohn v. Hall, 599 F.2d 476,483(1st Cir. 1979). By informing the jury that the question of whether John Keegan was the principal who killed the victim as irrelevant (Tr.XI-74,88,104), the trial judge invaded the province of the jury, Commonwealth v. Cote, 5 Mass. App.Ct. 365(1977); Commonwealth v. Foran, 110 Mass. 179(1872), thereby eliminating the jury's consideration of all evidence pointing to Keegan, Commonwealth v. Mulica, supra at 818-819 and eviscerating the defendants defense. (Tr.XI-15-20) Conde v. Henry, supra at 739-742; Herring v. New York, 422 U.S. 853,858-865(1975); Commonwealth v. Gilmore, 399 Mass. 741,744-745(1987).

In light of the fact that trial counsel's argument that Keegan was the principal was extremely relevant (Tr.XI-15-20), counsel's subsequent failure to object (Tr.XI-153-154) to the instruction that Keegan being the principal was irrelevant,(Tr.XI-74,88,104), was non-strategic error that, "..likely deprived the defendant of an otherwise available substantial ground of defense". Commonwealth v. Kane, 19 Mass.App.Ct. 129 142(1984). The resulting prejudice from eliminating the jury's consideration of the other perpretrator

evidence, Commonwealth v. Mulica, supra and trial counsel
arguments based thereon, Conde v. Henry, supra at 739,
indicates that counsel's failure to object to the
instruction amounted to prejudicial ineffective assistance
of counsel. Kubat v. Thieret, 867 F.2d 351,370-371;(7th
Cir. 1989); Gray v Lynn, 6 F.3d 263,269-270(5th Cir
!993); Oyola v Bowers, supra at 930-933.

Because some,"..courts have not hesitated in finding
ineffective assistance of counsel based upon isolated-
but important errors", Prou v. United States, 199 F.3d
37,48(1st Cir. 1999), this isolated omission by trial
counsel standing alone requires that the defendant be
afforded a new trial. For,"..The failure of counsel
to object to the jury instructions in question rendered
his defense-that he did not (kill the victim, because
Keegan killed her)- meaningless", Lucas v. O'Dea, supra
at 419, and the court must, "..conclude that the
instruction in the present case had the effect of
directing a verdict of guilty on the murder charge".Id

**(b)   Trial Counsel's Failure To Present A
Full Intoxication Defense And Failure
To Present The Defendants Testimony
Along With Others Was The Equivalent
Of A Concession Of Guilt**

At trial, two defenses were partially presented by trial

counsel; to wit, intoxication and another perpretrator.
In regard to the intoxication defense, trial counsel
had Eric Swindell acknowledge that his statement to

the police, he stated that when he observed the defendant
at 12:03-12:04 a.m. on June 2,1996, the defendant was
"real drunk". (Tr.IV-45,50,54) Trial counsel called
Peabody Police Officer Conway to testify that at 3:00
a.m., the defendant still emitted a strong smell of
alcohol, he was unsteady on his feet and after making
a determination that the defendant was intoxicated,
placed him in protective custody for his own safety.
(Tr.IX52-54) The dancer from the Golden Banana, Cheryl
Parrott, testified that on june1,1996, sometime after
8:00 p.m., the defendant asked her to have a drink with
him, they shared a pitcher of beer and she observed
the defendant and Keegan drinking steadily for about
$2\frac{1}{2}$ to 3 hours. (tr. II-75,77-78,83) Based on the evidence
trial counsel announced his intention to rely on
intoxication in his opening statement(Tr.II-43-44),
he devoted one third of his closing argument to an
intoxication defense (Tr. XI-10-15), and he sought (Tr.
X-7-8) and obtained intoxication instructions. (Tr.
XI-79-80,90-91,105,117,122,126,136-137,148) the
instructions on intoxication, however, merely explained
that such evidence could be considered, however, the
instructions did not specify the degree of intoxication
necessary to negate specific intent nor did they other-
wise explain how jurors were to weigh intoxication or
apply such evidence to the issue of specific intent.
Id.

Since Saturday, June 1,1996, was a busy night,
Parrott was required to work a double shift with at
least five other dancers (Tr.II-73-74-75,81-83) at the
bar which seats 30 to 40 patrons around the main stage
while other patrons observe performers on another stage.
(Tr. II-74-75,81-83) Although Parrott could not specify
the quantity of alcohol that the defendant consumed
in addition to or after the pitcher of beer that they
shared, (Tr.II-77-78), trial counsel did not introduce
the testimony of the bartenders, other dancers or patrons
who present that evening.

Officer Conways report stated that the defendant
"...said they had split 4-5 pitchers of beer at the
Golden Banana"(a-37). After a statement at side bar
by the prosecutor that,"He's going to try and put in
that there were 4 or 5 pitchers of beer or something
like that ...that sounds to me like a self serving state-
ment by the defendant which would be objectionable
hearsay" (Tr.IX-46), Trial counsel failed to attempt
to introduce this statement or admission by the defendant
during Conway's direct testimony. (Tr.IX-48-54) Moreover,
after the Commonwealth opened the door to the admission
of this statement by inquiring during cross examination
whether the defendant's statements to Officer Conway
were coherent(Tr. IX-56-57), counsel failed to introduce
the 4 or 5 pitchers of beer statement by not pursuing

redirect examination of Conway for their substantive value or for their value on the issue of voluntariness (Tr.IX-57 Crane v. Kentucky, 476 U.S. 683,691(1986).

Trial counsel's failure to investigate or interview the bartenders, dancers and patrons at the Golden Banana was based on his reliance on introducing the defendant's statement contained in Officer Conway's report. (Tr.XI-46) This Court must find that counsel's failure to summons and present testimony regarding the defendant's intoxication from either of these witnesses to buttress and otherwise support the intoxication evidence at trial, was non-strategic error falling,"...measurably below that which might be expected from an ordinary falible lawyer". Commonwealth v. Street,  supra at 287-288; Chambers v. Armontrout, 907 F.2d 825,830-831(8th Cir. 1990); Williams v. Washington, supra at 681.   Trial counsel's failure to attempt to introduce Officer Conways report regarding the defendant's statement (Tr.IX-46-57), notwithstanding the trial judge's clear invotation to consider admitting the report at a sidebar conference (Tr.IX-47), deprived the defendant of substantial corroborating evidence which amounted to ineffective assistance of counsel. Helton v. Secretary  for Department of Correction, 233 F.3d 1322,1324-1327(11th Cir. 2000); DePetris v. Kuykendall, 239 F.3d 1057,1062-1065 (9th Cir. 2001); Hart v. Gomez, 174 F.3d 1067,1070(9th Cir. 1999).

In regard to the available evidence of the defendant's consumption of numerous pitchers of beer immediately prior to the charged offenses, the docket entries reflect that a

motion for funds to retain an expert in the field of
intoxication was not filed. (A-3,11,19) Given the defendant's
defense, as a matter of course, such an expert should have
been at least consulted and his potential testimony evaluated.
Trial counsel's failure to retain an expert in the precise
field supporting a defense theory, requires this Court to
order that the defendant be afforded a new trial. Genius v.
Pepe, 50 F.3d 60,61(1st Cir. 1995)

     In the context of the evidence produced at trial, it
was more than obvious that the defendant would be convicted
if he did not testify regarding his state of intoxication
so that he was not able to share the intent of the principal
John Keegan when Keegan attacked and killed the victim.
Therefore, this Court must find that a competent attorney
would have necesarily presented the defendant's testimony
at trial. The record indicates that after the trial judge
suggested that the defendant discuss the issue with counsel
(Tr. IX-98), trial counsel advised the Court that,"Mr.
Dykens... is comfortable with the fact that **he's going
to accept my advise** and not testify". (Tr. X-3) (emphasis
added) This statement, Commonwealth v. Rosado, 408 Mass.
561,568(1990) conclusively demonstrates that the defendant
followed counsel's advice was which now presents the
question of whether such advice was manifestly wrong.
United States v. Butts, 630 F.Supp. 1145,1146-1149(d.
Me. 1986); DeLuca v. Lord, 858 F.Supp.1330,1358-1364(S.D.
N.Y. 1994).

Where, as here, in addition to the defendant being
the best witness as to the degree of his extreme in
intoxication, which trial counsel focused on as a matter
of strategy, and trial counsel's focusing on the "other
principal perpretrator defense" that Keegan was soley
responsible as stated in his opening statement(Tr.II-43-
44) and closing argument (Tr. XI-15-20), requires that
this Court hold that trial counsel's advice to the defen-
dant not to testify that Keegan attacked and killed the
victim was manifestly unreasonable. Commonwealth v. Licata
, wsupra; Deluca v. Lord, supra. "In short, the defendent
was denied a fair trial due to counsel's lack of
preperation and failure to investigate and develop the
evidence which could have supported the defendant's defense
and which could have raised a reasonable doubt in the
minds of the jurors". Commonwealth v. Farley, 432 Mass.
153-157(2000).

      (c)    **Multiple Omissions During Argument In Light
Of The Unbalanced Jury Instructions Which
Increased The Likelihood Of Conviction,
Resulted In A Breakdown Of The Adversarial
Process**

Trial counsel rendered ineffective assistance
of counsel to the defendant by failing to raise an
obvious flaw, Grady v. Artuz, 931 F.Supp. 1048,1063-
1064(S.D.N.Y. 1996) in the duplicitive kidnapping offense
being a lesser included offense subsumed within the
attempted aggravated rape charge by means of the joint
venture kidnapping incident. Commonwealth v. Gagnon

37 Mass.App.Ct 626(1994), affirmed 419 Mass. 1009(1995);
Commonwealth v. D'Amour, 428 Mass.725,747-750(1999);
Rutledge v. United States, 517U.S. 292,298-300(1996).
By allowing a lesser included offense to be tried with
a greater offense, and by failing to move that the Court
compel the Commonwealth to elect between the duplicitive
offenses, or move to dismiss the lesser kidnapping
indictment, counsel allowed the defendant to be prejudiced
by reason of the jury considering multiple indictments
that the unbalanced jury instructions focused on. The
trial judge's kidnapping instruction included the overly
broad explanation that,"...any restraint of a person's
liberty is confinement or imprisonment,"(Tr.IX-86) and
this flaw spilled over to the aggravated attempted rape
instructions which were repeated at least nine times.
(Tr. IX-93_107) If "any restraint" was sufficient, then
virtually every charge of rape in this Commonwealth would
be aggravated under the kidnapping instruction given
in this case. Gray v. Lynn,supra at 268-271.

In regard to the kidnapping and attempted aggravated
rape indictments, trial counsel's closing argument failed
to mention each of those indictments entirely(Tr.XI-4-
20) and "..did not marshall the evidence favorable to
the defendant's defense in an effort to create a
reasonable doubt". Commonwealth v. Farley, supra at 157.
Trial counsel also conceeded the defendant's guilt as
a joint venturer to kidnapping, attempted aggravated
rape charges and perhaps, to second degree murder by

concluding his argument with the statement that;

> I cannot stand before you and tell you
> that Mr. Dykens is blameless.**Clearly he is
> not.** But, he is not, to the degree that Mr.
> Keegan is, responsible for this death of Kristen
> Crowley.
> (Tr. XI-20)(emphasis added)

This very last statement of trial counsel was fol-
lowed by the Commonwealth taking advantage of the conces-
sion by arguing that only the defendant Dykens' actions
supported guilty findings. (Tr.XI-20-34) The trial judge
eviscerated trial counsel's "limited responsibility
argument" of placing the blame on Keegan as the principal
(Tr. XI-15-20), by having the jurors take notes (Tr. XI-
70-71) on his instruction that, "...when an individual
such as Timothy Dykens is alleged to be a pricipal ...
whether someone else may have been a principal is
irrelevant to this trial". (Tr.XI-74) Trial counsel
rendered prejudicial ineffective assistance to the defendant
Commonwealth v. Street, supra at 287-288, causing a break-
down in our adversarial system". Conde v. Henry, supra
at 739

The defendant's conviction must be reversed

**WHETHER THE MASSACHUSETTS APPEALS DECISION
WAS CONTRARY TO OR INVOLVED AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED FEDERAL
LAW, AS DETERMINED BY THE SUPREME COURT WHEN
DENYING PETITIONERS ISSUE THAT THE JUDGE
COMMITTED ERROR BY CLOSING THE COURTROOM
DURING JURY                    INSTRUCTION WITHOUT
MAKING FINDINGS**

The trial judge committed structual error by
implementing a surprise, arbitrary and unique courtroom
closure procedure during                jury instructions

without making specific findings as to the need for closing the courtroom. (Tr. XI-34) Moreover, trial counsel had no strategic reason for failing to object to this procedure and for failing to request that findings be made as to the need for this procedure. The implemented procedure was arbitrary and capricious and contravened the evenly and impartially applied fixed and permanent law requirements of Articles I, X, XI, XII and XXIX of the Massachusetts Declaration of Rights, Commonwealth v. Porter, supra at 278-279; Murphy v. Commissioner , suprs at 233. as well as, the Equal Protection Clause of the Fourteenth Amendment, Johnson v. Arizona, supra at 1354; Myers v.Ylst supra at 423.

"There is nothing in the Constitution of the Common-wealth corresponding to the right to a 'public trial' expressly granted by the Sixth Amendment to the Constitution of the United States," Commonwealth v. Blondin, 324 Mass. 564,570(1949) and consequently, the issue under state law is whether the defendant can be singled out for court-room closure when ever judge in this Commonwealth does not close their respective courtrooms during jury selection and final instructions. The right to a public trial under the Sixth Amendment applies to the states through the Fourteenth Amendment, Ducan v. ·ouisiana, 391 U.S. 145, 148, N.10(1968) and the SJC recognized that this right governs trials in the Commonwealth. Commonwealth v. Marshall 356 Mass. 432,435 (1969) In  Re  Oliver, 333 U.S. 257,270-272, N.25, N.29(1948)."The traditional Anglo-American distrust for secret trials has been variously ascribed

to the notorious use of this pratice by the Spanish
Inquisitions, to the excesses of the English Court of
Star Chamber, ...Whatever other benefits the guarantee
to an accused that his trial be conducted in public may
confer upon our society, the guarantee has always been
recognized as a safeguard against any attempt to employ
our courts as instruments of persecution". Id at 268-270.
"Essentially the public trial guarantee embodies a view
of human nature, true as a general rule, that judges...
will perform their... function more responsibility in
an open court than in a secret proceedings". Estes v.
Texas, 381 U.S. 532,588(1965) (Harlen,J., concurring)
This fact has proven to be accurate because,"... the
knowledge that every criminal trial is subject to contem-
poranious review in the forum of public opinion is an
effective restraint on possible abuse of judicial power".
In Re Oliver, supra at 270.

        At the outset of his final instructions to the jury,
the trial judge announced that:

>               I also address myself to the men and
>        women in here watching this trial as observers.
>        When I begin my final instructions, no one
>        will be allowed to enter the courtroom or
>        to leave it. So, if you wish to be in the
>        courtroom during final instructions, you
>        have to understand that you are not going
>        to be able to go during the course of those
>        instructions. And the court officers will
>        see to that.

>                (Tr. XI-34)(emphasis added)

there was no reason for the implementation of this procedure.
The unbalanced note-taking procedure, concomitantly utilized
by the trial judge, in combination with the closing of

the courtroom, gives the appearance that the trial judge's
placing his heavy hand on the scales of justice against
the defendant was intended to be concealed from anyone
who arrived late to attend the later part of the jury
instruction stage of the trial. The trial judge's order
that,"...no one will be allowed to enter the courtroom
or leave,"...an hour and a half or maybe even more,"(Tr.XI-
34) may have caused spectators who needed to leave the
courtroom for however brief a period (ie. to use a restroom)
to leave and not return based on the threat that they could
not leave regardless of the reason. The coercive effect
that court officers would be utilized to enforce the judge's
announcement must also be recognized as further restricting
the defendant's rights to a public trial. The trial judge's
announcement in the presence of the jury may also have
had an adverse impact on the jurors' continued impartiality.
Quercia v. United States, supra at 470

In light of the fact that the trial judge's order
did not involve limited exclusion of only a certain category
of witnesses falling within a "partial-closure"order,Guzman
v. Scully , 80 F.3d 772,775(2nd Cir 1996) [5] because, "...
the trial court's orders in this case made no exeptions
for members of the press or for relatives of the defendant",
this Court must "apply the overriding intrest standard"

---

5          Becuase the trial judge made clear his intentioRs
           intention to exclude the public from entering
           the courtroom in the most foreceful manner(Tr.XI
           34),this court cannot find that the closure
           was "entirely inadvertent" to avoid a
           constitutional analysis of the error. Peterson
           v. Williams, 85 F.3d 39,44(2nd Cir. 1996)

Davis v. Reynolds, 890 F.2d 1105,1109-1110(10th Cir.
1989), articulated in Waller v. Georgia, 467 U.S. 39,
48 (1984), which involves the following four factors;
One, the state must,"...advance an overriding interest
that it is likely to be prejudiced" if closure does
not occur. Because the trial judge issued the closure
order sua sponte, the record is capable of only one
possible rational for the order, to wit, the interest
of the judge in not being interrupted or jurors not
being distracted during the jury instruction stage
of the trial. Such a speculative interest, however,
cannot satisfy the "overriding interests" in avoiding
"prejudice". Also , the constitutional principle would
effectively be negated and the exception would essentially
swallow the rule if locking doors to the courtroom
for every jury trial in the Commonwealth during the
jury instruction stage was condoned under the same
circumstances as existed in this case. State v. Bone-
Club, 906 P.2d 325,329 (Wash. 1995),128 Wash.2d 254
(1995); People v. Rodriquez , 618 N.Y.S. 2nd 335,(A.D.
1 Dept. 1994) 209 A.D. 2d 237,239(1994), Vidal v. Williams,
31 F.3d 67,69(2nd Cir. 1994)

The second and third portions of the Waller analysis,
that,"...the closure must be no broader than necessary
to protect the interest" and"...the trial court must
consider reasonable alternatives to closing the proceeding",
certainly were not satisfied in the case at hand.

A narrowly tailored procedure to afford entry for late
arriving members of the public and seating them at
the rear of the courtroom clearly would have sufficed.
Guzman v Scully, supra at 776; United States v. Peters,
754 F.2d 753,761 (7th Cir. 1985).

In regard to the fourth factor that the trial
court, "...must make findings adequate to support the
closure"; because the Court was precluded from "post
hoc" fact finding that "cannot satisfy the deficiencies
in the trial court's record"; Waller v. Georgia, supra
at 49,N.8, the absence of fact finding requires that
the defendant be a afforded a new trial. Davis v. Reynolds,
supra at 1112; Guzman v. Scully, supra at 776-777,
English v. Artuz, 164 F.3d 105,109-110(2nd Cir. 1998).

Since the Commonwealth cannot be found to have
satisfied even one of the strict four part test, Judd
v. Haley, 250 F.3d 1308,1313-1320(11th Cir. 2001), for
the blanket closure here, Globe Newspaper Co. v. Superior
Court for Norfolk County, 457U.S. 596,607-608(1982)
and a showing of prejudice is not necessary for reversal,
Commonwealth v. Marshall, supra at 435, Waller v. Georgia,
supra at 49, for such "structual error", Johnson v.
United States, 520 U.S. 461,468-469(1997); Neder v.
United States, 527 U.S.1, 15-17(1999); Arizona v. Fulminante,
supra at 309-310, this Court must find that the trial
counsel had no possible strategic reason for failing
to object (Tr. IX-34-35) to the procedure. Moreover,
where as here, the closure order was issued,"...without
even affording defense counsel an opportunity to be

heard" and "...the judge at no time explored the feasibility of options other than complete closure," <u>Jones v. Henderson</u>, 683 F.Supp. 917,923-924(E.D.N.Y. 1988), this Court must also find that an objection would have been futile and excuse the defendant from procedural bar created by counsel's omission. This is the appropriate course where the record does not show a knowing, intelligent and voluntary waiver by the defendant and because counsel cannot waive such a crucial Sixth Amendment right <u>Brookhart v. Janis,</u> 384 U.S. 1,7(1966); <u>Clemons v. Delo</u>, 124 F.3d 944,956(8th Cir. 1997). This Court must create a bright line rule of automatic reversal for a <u>sua sponte</u> blanket courtroom closure to prevent the trial court doors in this Commonwealth from being closed at any critical stage of trial, whether that stage involves impanelment, presentation of evidence, argument or jury instructions.

Given the fact that a long line of Supreme Court, "...cases have uniformaly recognized the public-trial guarantee as one created for the benefit of the defendant", <u>Gannett Co. v. DePasquale</u>, 443 U.S. 368,380(1979), this Court must find that had counsel alerted the trial judge to the <u>Waller</u>, <u>supra</u>, requirements, that certainly would "have accomplished something material for the defense" <u>Commonwealth v. Street</u>, 388 Mass. 282;288(1983),

---

-56-

by either compelling the judge to continue to afford
the defendant his fundamental right or to guarantee
automatic reversal if the judge persisted with his closure
order after being informed of the Waller requirements.
Trial counsel's failure to object to the closing of
the courtroom, "...likely deprived the defendant of an
otherwise available, substantial ground of defense",
Commonwealth v. Safarian, 366 Mass. 89,96 (1974). For,
such prejudice, "...exists where [a] court would have
unanimously ordered a new trial if an exception had been
saved". Commonwealth v. Alphas, 430 Mass. 8,13, n N.6(1999),
quoting Commonwealth v. Freeman, 352 Mass. 556(1967).
Trial counsel's silence arose from incompetence and
ignorance of the law, rather than strategy", Washington
v. Hofbauer, supra at 704, and consequently, this Court
may presume incompetence from trial counsel's failure
to call the trial judge's attention to Commonwealth
v. Marshall, supra and Waller v. Georgia, supra,
Commonwealth v. Rossi, 19 Mass.App.Ct. 257,259-261(1985).
Trial counsel rendered ineffective assistance under
both state and federal standards.

    The defendant's convictions must be reversed.

## CONCLUSION

For the forgoing reasons, and the State's inability, or desire to follow precedent under equal protection of the law the defendant's convictions must be reversed.[7]

Respectfully submitted
Pro-se

*Timothy Dykens*

Timothy Dykens
Po. Box 100
MCI Cedar Junction
S.Walpole Ma. 02071

**Dated 2 January 2006**

---

[7]   The lesser included kidnapping indictment must be
dismissed prior to retrial on the attempted aggravated
rape indictment if the Commonwealth elects to proceed
to retrial on the greater offense

# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

**Timothy Dykens,**
**Petitioner,**

**v.**

**Peter Allen**
**Respondent.**

---

**ON APPEAL FROM THE JUDGMENT OF THE STATE
COURT PURSUANT TO 28 U.S.C.§ 2254.**

---

---

**PETITIONER'S MEMORANDUM**

---

**Dated 2 January 2005**

AO 241 (Rev. 5/85)

**PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District   Essex County | |
|---|---|---|
| Name   Timothy George Dykens | Prisoner No.   w63485 | Case No. |

| Place of Confinement |
|---|
| M.C.I. Cedar Junction |

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| Timothy George Dykens | V.   Peter Allen Superintendant |

| The Attorney General of the State of:   Massachusetts |
|---|

1st Ammended

**PETITION**

1. Name and location of court which entered the judgment of conviction under attack

   Lawrence Superior Court, Lawrence Mass

2. Date of judgment of conviction _____ 10-27-97

3. Length of sentence _____ Life without Parole

4. Nature of offense involved (all counts)   Murder in the First Degree, Attempted Aggravated

   Rape, and Kidnapping

5. What was your plea? (Check one)
   (a) Not guilty      ☒
   (b) Guilty          ☐
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury       ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐      No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒      No ☐

(2)

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

    (a) Name of court   __Supreme Judicial Court__

    (b) Result   _____Affirmed__

    (c) Date of result and citation, if known   ___3-14-03__

    (d) Grounds raised _Constitutional error on note taking, closing of courtroom during_

      _jury selection & instructions. Ineffective assistance of counsel._

    (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

      (1) Name of court _____

      (2) Result _____

      (3) Date of result and citation, if known _____

      (4) Grounds raised _____

    (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

      (1) Name of court _____

      (2) Result _____

      (3) Date of result and citation, if known _____

      (4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☒     No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court   __Essex County Superior Court__

      (2) Nature of proceeding _Motion for new Trial__

      (3) Grounds raised ___Ineffective Assistance of Counsel__

AO 241 (Rev. 5/85)

_____

_____

_____

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
     Yes ☐         No ☒

(5)  Result _____ Affirmed _____

(6)  Date of result _____

(b)  As to any second petition, application or motion give the same information:

(1)  Name of court _____

(2)  Nature of proceeding _____

_____

(3)  Grounds raised _____

_____

_____

_____

_____

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
     Yes ☐         No ☐

(5)  Result _____

(6)  Date of result _____

(c)  Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1)  First petition, etc.          Yes ☒      No ☐
(2)  Second petition, etc.         Yes ☐      No ☐

(d)  If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

12.  State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.

     Caution:  In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted you state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self−incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.    Ground one: Constitutional error by Judge on note taking

during jury instructions

Supporting FACTS (state *briefly* without citing cases or law) The arbitrary and unequelly

applied notetaking procedure differs materially from the standard

notetaking procedures governed by Superior Court Rule 8A.

Failure to give jury proper cautionary instructions, Allowance

of unrestricted notetaking during deliberations.


B.    Ground two: Ineffective Assistance of counsel


Supporting FACTS (state *briefly* without citing cases or law) Trial counsel's failure to

object to a prejudicial jury instruction, and to request appropriate

guidelines, and or cautionary instructions. Failure to object

to the unbalanced and unrestricted instructions and failure

to request  inspection and/or preservation of the jurors notes

AO 241' (Rev. 5/85)

C.    Ground three:  INEFFECTIVE ASSISTANCE OF COUNSEL

Supporting FACTS (state *briefly* without citing cases or law)  TRIAL COUNSELS FAILURE

TO PRESENT A FULL INTOXICATION DEFENSE, AND FAILURE TO CALL

DEFENDANT AND OTHER WITNESSES WAS EQUIVALENT AS A CONCESSION

OF GUILT

D.    Ground four:  INEFFECTIVE ASSISTANCE OF COUNSEL

Supporting FACTS (state *briefly* without citing cases or law)  FAILURE TO MAKE A CLOSING

ARGUMENT ON TWO OF THE INDICTMENTS, AND CONCEDING THE DEFENDANTS

GUILT DURING CLOSING ARGUMENTS.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes ☐        No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

    (a)    At preliminary hearing  ALBERT CONLON 73 N. COMMON, LYNN MA 01902

    (b)    At arraignment and plea  ALBERT CONLON 73 N. COMMOM, LYNN MA 01092

AO 241 (Rev. 5/85)

GROUND FIVE.  INEFFECTIVE ASSISTANCE OF COUNSEL

Supporting FACTS (state *briefly* without citing cases or law)  TRIAL COUNSEL WAS
INEFFECTIVE WHEN HE FAILED TO OBJECT WHEN INSTRUCTIONS
EVISCERATED DEFENDANTS OTHER PERSON THEORY IN INSTRUCTIONS
WHEN HIS WHOLE DEFENSE WAS BASED ON THE THEORY WITHOUT
WARNING.

GROUND SIX   COSTITUTIONAL ERROR BY JUDGE BY CLOSING THE COURTROOM

Supporting FACTS (state *briefly* without citing cases or law)  THE JUDGE ERRED WHEN HE
CLOSED THE COURTROOM DURING JURY INSTRUCTION, WITHOUT MAKING
ANY FINDINGS AS TO WHY., AND PREVENTING TRIAL

Supporting FACTS (state *briefly* without citing cases or law)

AO 241 (Rev. 5/85)

(c) At trial   Albert Conlon 73 N. Common Lynn Ma. 01902

(d) At sentencing   Albert Conlon 73 N. Common Lynn Ma..01902

(e) On appeal   James A Couture 10 S.Main box 63 Belchertown Ma. 01007

Bernard Grossberg 99 Summer Street Boston Ma. 02110

(f) In any post−conviction proceeding

(g) On appeal from any adverse ruling in a post−conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and the same time?

Yes ☒          No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐          No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future:

(b) Give date and length of the above sentence:

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐          No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_September 1 2005_
(date)

_Timothy _____
Signature of Petitioner

(7)