## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                )
TIMOTHY DYKENS                  )
            Petitioner,         )
                                )
v.                              )        Civil Action No. 04-10544-NMG
                                )
PETER ALLEN                     )
            Respondent.         )
_____)

## RESPONDENT'S MEMORANDUM IN OPPOSITION
## TO THE PETITION FOR HABEAS CORPUS

The respondent, Peter Allen, through counsel, hereby submits his memorandum

of law in opposition to the petition for a writ of habeas corpus filed by Timothy Dykens

("the petitioner").  As argued in this memorandum, the petition should be denied where

some of the claims are procedurally defaulted and where the state court's adjudication

of the remaining claims was not contrary to or an unreasonable application of clearly

established federal law as determined by the Supreme Court.

## PRIOR PROCEEDINGS

On June 12, 1996, an Essex County grand jury indicted the petitioner for first-degree

murder of Kristen Crowley; attempted aggravated rape; and kidnaping (S.A. 2).[1] Following

a jury trial, Grasso, J., presiding, the petitioner was convicted of all of the charges on

October 27, 1997 (S.A. 2).   The court sentenced him to the mandatory term of life

imprisonment on the murder conviction and to concurrent terms of eight to ten years and

three to five years, respectively, for kidnaping and attempted aggravated rape (S.A. 2).  On

---

[1]  The respondent's supplemental answer will be referred to as (S.A. (Exhibit
No)).

the same day, the petitioner filed a notice of appeal with the Supreme Judicial Court ("SJC") (S.A. 2).

On February 22, 1999, the petitioner filed a motion to stay the appeal for the purpose of filing a motion for new trial (S.A. 2).  On February 26, 1999, the petitioner filed a motion for new trial in the SJC and requested that the motion be remanded to the superior court for an evidentiary hearing (S.A. 2).  On March 1, 1999 the SJC allowed the motion to stay the appellate proceedings and remanded the case to the superior court for consideration of the petitioner's motion for new trial (S.A. 2).  Judge Grasso denied the motion on June 28, 1999 (S.A. 2).  The appeal was reinstated on February 28, 2000 (S.A. 2).  The appellate proceedings were further stayed between February 2, 2001 and June 18, 2002 when the petitioner filed his brief.  The SJC affirmed the petitioner's convictions and the denial of his motion for new trial on March 14, 2003.  *Commonwealth v. Dykens*, 438 Mass. 827, 784 N.E.2d 1107 (2003) (S.A. 4).

The petitioner filed a petiton for writ of habeas corpus in this court on March 16, 2004.  The respondent filed an answer, supplemental answer and a motion to dismiss for failure to exhaust state court remedies on December 29, 2004.  On June 17, 2005, this court denied the motion to dismiss, and allowed the petitioner thirty days to delete the unexhausted claims and to move forward with the remaining claims.  The petitioner did not respond within thirty days and on August 3, 2005, the court dismissed the petition.  On September 6, 2005, the petitioner filed a motion to reconsider and on December 8, 2005, the court allowed the petitioner to proceed on the exhausted claims.  On January 13, 2006 the petitioner filed a memorandum of law in support of his habeas corpus petition.

2

## STATEMENT OF FACTS

The Massachusetts Supreme Judicial Court's recitation of the facts of the petitioner's crimes is entitled to the presumption of correctness under 28 U.S.C. §2254(e)(1).  *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1sr Cir. 2000).  The AEDPA presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion.  *Gunter v. Maloney*, 291 F.3d at 76; *Sanna v. DiPaolo*, 265 F.3d at 7.  In addition, the presumption of correctness extends to factual determinations made by both state trial and appellate courts.  *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), and to any factual findings implicit in the state court's ruling.  *LaVallee v. Delle Rose*, 410 U.S. 690, 692 (1972); *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir.), *cert. denied*, 531 U.S. 1003 (2000).   As the First Circuit has noted, "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings."  *Mastracchio v. Vose*, 274 F.3 590, 598 (1st Cir. 2001).   The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1).

The Supreme Judicial Court found the following facts concerning the petitioner's crimes:

> On the evening of June 1, 1996, while the defendant and his friend, John Keegan, were at the Golden Banana, a Peabody nightclub, they repeatedly asked a dancer to leave with them. She declined. At about midnight, the defendant (wearing a white shirt) and Keegan (wearing a dark shirt and dark shorts) pulled into the Stadium Mobil Mart, a twenty-four hour gasoline station and convenience store off Route 1 in Peabody. There they noticed the victim was purchasing groceries. Keegan pointed her out to the defendant, saying, "She looks like the girl that we just left from the Banana." The defendant replied, repeating, "You know what we got to do." The victim bought cigarettes, a can of Beefaroni, a bottle of Mountain Dew, and a bottle of water and left. The defendant and Keegan followed her to her home in the

3

Ledgewood Condominiums in Peabody.

According to various witnesses at the condominium, some time after midnight, a woman and a man were struggling in the parking lot. The woman sounded in distress. One of the two was wearing something white. They fell, and another individual (wearing a dark top and dark shorts) approached and delivered four or five violent kicks, then walked away. All three disappeared when a car drove by. The driver of that car heard cracking in the woods and saw a man in a white shirt lying atop another person there. He also saw a bottle of Mountain Dew, a can of spaghetti, a pair of black, high-heeled shoes, and keys scattered about the walkway leading to the building. The driver went to his third-floor apartment. From there, he saw a person later identified as Keegan emerge from the woods. Then he saw another individual in the woods dragging someone by the arms through the trees toward railroad tracks; Keegan followed. Finally, a third witness, after speaking briefly with Keegan and noticing the items scattered about, telephoned the police. Sergeant Edward Bettencourt of the Peabody police department responded and found the victim's body in the wooded area near the condominiums. Her clothing had been torn and pulled back, fully exposing her breasts and genital area. Extreme damage, which need not be recounted here, had been inflicted on the victim. A forty-seven pound boulder lay forty inches from the victim's head, and a two-pound rock was near her knee. Both were covered entirely with blood. Adhering to the boulder was blonde hair (the victim had blonde hair) with flesh attached at the roots. Surrounding trees and bushes were spattered with blood. The cause of death was later determined to be blunt trauma to the head and neck, resulting in multiple skull, facial, and jaw fractures and destruction of the brain. The victim's right hand revealed injuries suggestive of defensive wounds. Abrasions and scrapes to her body indicated that she had been dragged along the ground. Her genital area showed no sign of trauma, and no semen was present.

The defendant and Keegan were apprehended shortly after the victim's body was found. The defendant, with a cut lip and scrapes and scratches on his body, was found at a public telephone. His clothing (including a white shirt) was soaking wet, and the defendant responded to police inquiry about his wet clothing by stating that he had been thrown into a puddle in a nearby empty lot; police investigation revealed that the lot was completely dry. (Other evidence suggested that the defendant's clothing was wet from walking in marshy water along railroad tracks.) Deoxyribonucleic acid (DNA) testing of a bloodstain on the front of the defendant's underwear indicated that "the person who contributed the most DNA to that stain" had a DNA type that "matche[d]" that of the victim. Blood type analysis of a bloodstain on the fly area of the defendant's pants revealed that both he and Keegan were excluded as its source, but that the victim could not be excluded. (Evidence indicated that passing through a wet, marshy area could adversely affect the results of both the DNA and the blood type analyses.) The defendant's belt and belt buckle had a blood spatter in a direction that could have been made only if the belt had been unbuckled. Police were unable to lift fingerprints from the bloody rocks. The defendant was charged with murder in the first degree, attempted aggravated rape, and kidnaping. At trial, the Commonwealth proceeded on all three theories of murder in the first degree: deliberate premeditation, extreme atrocity or cruelty (with the defendant as a principal only as to those two theories), and felony-murder (with the defendant as either a principal or a joint venturer with Keegan). His defense was

> that Keegan was the principal actor in committing the crimes and that the defendant was too intoxicated either to have been the principal actor or to have had the capacity to share the intent to commit the crimes so as to be adjudged a joint venturer.

*Commonwealth v. Dykens*, 438 Mass. at 828-830, 784 N.E.2d at 1111-1112.  S.A. 4.

Other findings of fact by the SJC will be recited herein as they relate to specific issues raised by the petitioner.

## **ARGUMENT**

### *STANDARD OF REVIEW*

Because the subject petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("the AEDPA"), this Court's review is governed by that act. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Williams v. Matesanz*, 230 F.3d 421, 426 (1st Cir. 2000) ("a federal [habeas] court operates within a closely circumscribed sphere").  In relevant part, the AEDPA precludes a federal court from granting habeas relief, unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. §2254(d)(2).  In addition, under the AEDPA, state-court determinations of factual issues "shall be presumed to be correct," unless the petitioner rebuts this "presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).    This "highly

deferential standard for evaluating state-court rulings" reflects the overarching structure of the federal habeas corpus scheme, which vests "primary responsibility" for evaluating federal law claims raised in criminal trials in the state courts, courts which must be presumed in habeas corpus courts to know and follow the law. *Woodford v. Visciotti*, 537 U.S.19, 24, 27 (2002) (per curiam).

A state-court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances: (1) "if the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases; or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme court] precedent." *Taylor*, 529 U.S. at 405-06.   Under either scenario, to satisfy the "contrary to" clause, the state-court decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme court precedent. *Id.*

A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id*. at 413.   In making this determination, a habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.   The same objective unreasonableness standard applies to the "unreasonable determination of facts prong of § 2254(d)(2). *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000).

There is no bright line rule as to what constitutes an "objectively unreasonable"

application of federal law or determination of facts. *Taylor*, 529 U.S. at 410. As the *Taylor* decision makes clear, however, an unreasonable state-court determination is not the equivalent of an incorrect one. *Id*. "Indeed, because Congress used the word 'unreasonable' . . . and not words like 'erroneous' or 'incorrect,' a federal habeas court 'may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application [or determination] must also be unreasonable.'" *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.) , *cert. denied*, 534 U.S. 925 (2001) (quoting *Taylor*, 529 U.S. at 411). As this Court sitting en banc held, "'some increment of incorrectness beyond error is required' . . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). If, for instance, the state court reaches a determination that is "devoid of record support for its conclusion or is arbitrary," the AEDPA's unreasonable application prong may be satisfied. *Id*. at 36-37 (citing *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998)). Since "[a]pplying a general standard to a specific case can demand a substantial element of judgment," "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004). The clearly established law that is relevant to the analysis under § 2254(d)(1) is limited to the holdings of United States Supreme Court cases extant at the time of the state court decision, and does not include the dicta of such cases. *Id*. at 2147; *Williams*, 529 U.S. at 412.

7

Factual determinations of state courts are granted similar deference. To satisfy § 2254(d)(2), a petitioner must show that the state's factual determination was objectively unreasonable. *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)). Objective unreasonableness is not merely an incorrect or erroneous decision. *Williams*, 529 U.S. at 410; *see also Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003) ("petitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error. Instead, he must further establish that the state court committed unreasonable error."); *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003) ("federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination").

Moreover, § 2254(d)(2) must be interpreted in conjunction with § 2254(e)(1), which specifies both that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Sanna v. DiPaolo*, 265 F.3d 1, 7. *See also Miller-El,* 537 U.S. at 341 (noting that to prevail under § 2254(d)(2), habeas petitioner must both disprove the factual finding by clear and convincing evidence and demonstrate that the court's factual determination was objectively unreasonable).

I.    **THE PETITIONER'S FIRST CLAIM, REGARDING JURY NOTETAKING AND THE JUDGE'S INSTRUCTIONS REGARDING THE NOTES AND HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING COUNSEL'S FAILURE TO PRESENT A FULL INTOXICATION DEFENSE ARE BOTH PROCEDURALLY DEFAULTED AND THE PETITIONER HAS FAILED TO SHOW CAUSE FOR AND PREJUDICE FROM THE DEFAULT OR THAT A FAILURE TO CONSIDER THE CLAIMS WILL RESULT IN A FUNDAMENTAL MISCARRIAGE OF JUSTICE.**

The petitioner claims that the judge violated his Sixth Amendment rights when he allowed the jury to take notes during only the second part of the jury instructions. He also claims that the judge failed to give the jury proper cautionary instructions regarding their use of the notes. The petitioner did not object to the note-taking procedure or the instructions during the trial and the claims are therefore procedurally defaulted. Similarly, the petitioner's claim that his counsel was ineffective for failing to present a full intoxication defense and advising him not to testify was not presented in his first motion for new trial and is therefore also procedurally defaulted.

It is well-established that federal habeas review of a claim is precluded when the state court has decided that issue on the basis of an adequate and independent state ground. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977). The "procedural default rule" reflects the Supreme Court's view that, in the interests of comity and federalism, a habeas court should "'not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Boutwell v. Bissonnette*, 66 F.Supp.2d 243, 245 (D. Mass. 1999), *quoting Coleman*, 501 U.S. at 729. *See also Edwards v. Carpenter*, 529 U.S. 446, 450 (2000). As a consequence of this rule, "state prisoners whose claims are

9

dismissed by state courts for procedural reasons cannot gain access to federal habeas review." *Boutwell v. Bissonnette*, 66 F.Supp.2d at 245 (citations omitted).

"[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris,* 489 U.S. at 262. *Accord, Coleman*, 501 U.S. at 749-50. The Supreme Court has recognized three objective factors, external to the defense, that are sufficient to constitute cause to excuse a procedural default: (1) the factual or legal basis for a claim was not reasonably available; (2) interference by state officials that made compliance with the state procedural rules impracticable; or (3) attorney error rising to the level of constitutionally ineffective assistance of counsel. *Coleman*, 501 U.S. at 751; *Murray*, 477 U.S. at 488. *See also Edwards*, 529 U.S. at 451.

Habeas review of a procedurally defaulted claim is precluded unless "petitioner can demonstrate cause for the default and prejudice stemming therefrom, or alternatively, unless the petitioner can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice." *Harris*, 489 U.S. at 262. *Accord, Coleman*, 501 U.S. at 749-50; *Burks v. DuBois*, 55 F.3d 712, 716 (1st Cir. 1995). The "miscarriage of justice" exception to a showing of cause and prejudice is "'seldom to be used, and explicitly tied to a showing of actual innocence.'" *Killela v. Hall*, 84 F.Supp. 2d 204, 210 (D. Mass. 2000), *quoting Burks*, 55 F.3d at 717.

The petitioner's first claim regarding jury notetaking is procedurally defaulted by

Massachusetts' "long-standing rule that issues not raised at trial ... are treated as waived." *Commonwealth v. Curtis*, 417 Mass. 619, 632 N.E.2d 821, 827 (Mass. 1994). The First Circuit has repeatedly recognized that "Massachusetts has ... routinely enforced, [and] consistently applied [the] contemporaneous objection rule," which requires a party to object to a perceived trial error at the time the error occurs to preserve the issue for appellate review. *See Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir. 1995) (collecting cases); *see also Brewer*, 119 F.3d at 1001 (describing Massachusetts' contemporaneous objection rule as "firmly entrenched"). A state court decision based on a petitioner's failure to comply with a contemporaneous objection rule, or to properly raise an issue on appeal, constitutes an adequate and independent state ground. *See, e.g., Coleman*, 501 U.S. at 729-30 (untimely filing of notice of appeal); *Murray v. Carrier*, 477 U.S. 478, 481-82 (failure to raise claim of error on appeal); *Wainwright*, 433 U.S. at 86-87 (contemporaneous objection). The SJC specifically held in this case that the petitioner had defaulted this claim when he failed to object to the note-taking procedure and the jury instructions with regard to the note-taking. *Commonwealth v. Dykens*, 438 Mass. 827, 831 (2003). Once the claim is waived, appellate review (in a first-degree murder case) is then limited to the discretionary standard of whether the alleged error created a substantial likelihood of a miscarriage of justice. *Lynch v. Ficco*, 438 F.3d 35, 45 (1st Cir. 2006). *See also Burks v. DuBois*, 55 F.3d at 716; *Puleio v. Vose*, 830 F.2d at 1199. Here, the SJC reviewed this procedurally barred claim under that standard. *Commonwealth v. Dykens*, 438 Mass. at 831. The limited review undertaken pursuant to the Massachusetts "miscarriage of justice" standard does not operate as a waiver of the underlying procedural default. *Burks*, 55 F.3d

11

at 716, n. 2.  To the contrary, such review constitutes the "classic example of an independent and adequate state ground" supporting application of the procedural default rule.  *Simpson v. Matesanz*, 175 F.3d 200, 207 (1st Cir. 1999).

Petitioner claimed that his counsel was ineffective for failing to object to the note-taking and the jury instruction.  It is well settled, however, that attorney error or oversight is not sufficient cause for excusing a procedural default unless it rises to the level of constitutional ineffective assistance.  *Burks*, 55 F.3d.  In this case, the SJC properly found that the trial judge did not abuse his discretion in permitting the jury to take notes only during the portion of the jury charge concerning elements of the crimes.  *Dykens*, 438 Mass. at 833, 784 N.E.2d at 1113.  The SJC also held that the judge properly instructed the jury that their notes should not be copious and that they should not use the notes as authority to persuade other jurors so there was no error.  *Id*. at 834, 784 N.E.2d at 1114-1115.  Thus, the SJC concluded, where there was no error in the note-taking procedure or in the judge's instructions regarding note-taking, there can be no ineffective assistance of trial counsel.  *Id*. at 837, 784 N.E.2d at 1116.  In light of this, petitioner cannot rely on ineffective assistance as cause for his procedural default.

The petitioner has also failed to allege sufficient prejudice stemming from the procedural default.  Prejudice requires the petitioner to demonstrate "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Ortiz v. DuBois*, 19 F.3d 708, 714 (1st Cir. 1994), *cert. denied*, 513 U. S. 1085 (1995), *quoting United States v. Frady*, 456 U. S. 152, 170 (1982).  As stated, supra, where there

12

was no error in the note-taking procedure or the judge's instructions, petitioner cannot

make a sufficient showing of prejudice.

The petitioner's ineffective assistance claim regarding his intoxication defense is

also procedurally defaulted. In Massachusetts, even after conviction has become final, a

petitioner may seek release from unlawful confinement or a new trial under Rules 30(a)

and (b) of the Massachusetts Rules of Criminal Procedure. Mass. R. Crim. P. 30(a) and

(b), 378 Mass. 842, 900 (1979). However, a petitioner's right to resort to such relief is

limited:

> *Waiver.* All grounds of relief claimed by a defendant under
> subdivisions (a) and (b) of this rule shall be raised by the defendant *in his*
> *original or amended motion. Any grounds not so raised are waived* unless
> the judge in his discretion permits them to be raised in a subsequent motion,
> or unless such grounds could not reasonably have been raised in the original
> motion or amended motion.

Mass. R. Crim. P. 30(c)(2), 378 Mass. 842, 900-01 (1979)(emphasis added). *See Hall v.*

*DiPaolo*, 986 F.2d 7, 11 (1st Cir. 1993). The waiver rule under Mass. R. Crim. P. 30(c)(2)

is well-established and regularly applied to bar claims. *Commonwealth v. Azar*, 435 Mass.

675, 675-676, 760 N.E.2d 1224 (2002); *Commonwealth v. LeFave*, 430 Mass. 169, 170,

714 N.E.2d 805 (1999). In this case the petitioner filed a motion for new trial and stayed

his appeal while this motion was pending, but did not raise the above ineffective assistance

of counsel claims. The SJC acknowledged this default and relied on it in declining to

consider the merits of the claim:

> The defendant has not provided any evidence that would form a basis for
> concluding that something helpful to his defense would have been discovered. The
> appropriate means for making this argument is by a motion for a new trial that
> provides the judge the opportunity to make findings regarding what evidence might
> have been obtained and its potential effect at trial. *See Commonwealth v. Waite*,

422 Mass. 792, 807, 665 N.E.2d 982 (1996).

The contentions regarding the presentation of expert testimony and advising the defendant to testify also require factfinding and consideration by the trial judge, who is 'better equipped to conduct . . . evidentiary hearings.' *Id*. These claims thus are not properly before us, and we do not consider whether they have any merit. *See Commonwealth v. Burgess*, 434 Mass. 307, 317-318, 749 N.E.2d 112 (2001).

In footnote 8, the SJC acknowledged that "none of these claims was raised in the defendant's motion for a new trial. *Commonwealth v. Dykens*, 438 Mass. at 839, 784 N.E.2d at 1118. Thus, the SJC specifically found that the claims were waived. This determination constitutes an "adequate and independent state law ground" within the meaning of the procedural default rule, thereby precluding habeas review. *See Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied*, 522 U.S. 1151 (1998).

The petitioner has not demonstrated sufficient cause for failing to raise the ineffective claim regarding his intoxication defense in the first motion for new trial. He had new counsel and there is no reason that these additional bases for ineffective assistance of counsel could not have been added to those raised in the motion for new trial.

Nor can the petitioner show any prejudice from the failure to present other witnesses or expert testimony regarding his intoxication on the night of the murder or from his failure to testify. As the SJC found, speculation about what other employees or patrons of the Golden Banana might have testified to is not enough to support the claim. *Dykens*, 438 Mass. at 840, 784 N.E.2d at 1118. Petitioner's trial counsel effectively presented the intoxication theory through cross examination, eliciting Swindell's statement that the petitioner was "real drunk" at the Mobil Mart (Tr. III/45), and Sergeant Conway's observation that the petitioner appeared so intoxicated that he was placed in protective

14

custody (Tr. IX/52-54). In closing argument, counsel then combined this specific evidence of drunkenness with other inferences that could be drawn from the evidence in arguing that the petitioner was extremely intoxicated (Tr. XI/12-15).

In light of the evidence, including video footage of the petitioner at the Mobil Mart making an ATM withdrawal and a purchase a half hour before the murder, expert testimony about his alcohol consumption likely would not have influenced the jury's decision. Furthermore, trial counsel reasonably advised the petitioner not to testify. At best, he could have given details about how much he drank on the night of the murder, but this would have cut against his extreme intoxication theory. Choosing to testify would also have opened the door to damaging cross-examination about his behavior at the Golden Banana, his remarks at the Mobil Mart and the presence of the victim's blood on his underwear and the blood spatter on his open belt, as well as his lies to the police. Thus, counsel's failure to introduce further evidence about the petitioner's intoxication did not "infect his trial with error of constitutional dimension," *Ortiz v. DuBois*, 19 F.3d at 714, and he cannot show sufficient prejudice to excuse his procedural default.

The only other avenue of relief, that a refusal to hear these claims would result in a "miscarriage of justice," is foreclosed.   The petitioner could make no demonstration to this habeas court that he is actually innocent. "To establish actual innocence, 'petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Simpson v. Matesanz*, 175 F. 3d at 210, quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citations omitted). Where petitioner admitted to being with Keegan at the time of the murder, the jury was justified in determining that he had the mental state required for murder. He cannot establish such

15

actual innocence.  Habeas review of these claims is therefore barred by procedural default.

II.    **THE SJC'S DECISION THAT PETITIONER RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT LAW.**

The petitioner also claims that not only was his trial counsel constitutionally ineffective for his failure to object to the note-taking procedure and the instructions regarding the note-taking, but was also ineffective in 1) his failure to object to the instructions on principal liability; and 2) his failure to argue that the kidnaping charge was a lesser included offense subsumed within the charge of attempted aggravated rape and was therefore duplicative.  In analyzing the ineffective assistance of counsel claims, the SJC reviewed the allegations "to determine whether there was error in the course of the trial (be it defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion."  *Dykens*, 438 Mass. at 437, 784 N.E.2d at 1116.  This standard of review required by M.G.L. c. 278, § 33E for defendants convicted of first-degree murder, is more favorable to a defendant than the standard of review for ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), under which a defendant must show that but for the unprofessional errors of counsel, the result of the proceeding would have been different.  Where the petitioner received a higher standard of review than he was entitled to and where the SJC acknowledged the *Strickland* standard of review, its decision was not contrary to clearly established Supreme Court law.

Nor was the SJC's decision an unreasonable application of *Strickland*.    In *Strickland*, the Supreme Court established that a violation of the right to effective

16

assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

Under the performance prong of *Strickland*, a party claiming ineffective assistance must prove that counsel's performance fell below an "objective standard of reasonableness." *Id.* at 687-88. There is a "strong presumption" that counsel's strategy and tactics fall "within the range of reasonable professional assistance," and courts should avoid second-guessing counsel's performance with the use of hindsight. *Id.* at 689. As the Supreme Court has explained, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction. . . , and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. It is only where, given the facts then existing, counsel's "choice was so patently unreasonable that no competent attorney would have made it," that the ineffective assistance prong of *Strickland* may be satisfied. *Phoenix v. Matesanz*, 233 F.3d 77, 82 n.2 (1st Cir. 2000).

Under the prejudice prong of *Strickland*, a party claiming ineffective assistance must show "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. Not all errors by counsel are sufficient to satisfy this standard. *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Supreme Court has described this as a "highly demanding" and "heavy burden." *See Williams*, 529 U.S. at 393. A defendant's failure to satisfy one prong of the *Strickland*

17

analysis renders it unnecessary for a court to consider the remaining prong. *Strickland*, 466 U.S. at 697.

As discussed in Argument I, *supra*, where there was no error in the notetaking procedure or the judge's instructions regarding the note-taking, there can be no ineffective assistance of counsel. The SJC's holding with regard to this claim was not an unreasonable application of *Strickland*.

To the extent that the petitioner claims ineffective assistance for his counsel's failure to request inspection or preservation of the jurors' notes, this claim must also fail. Superior Court Rule 8A mandates destruction of jurors' notes "on the recording of the verdict." As the SJC found, "'to review a juror's notes would violate the sanctity of the deliberative process [and] the parties have 'no more right to examine these writings that [they] do to interrogate the jurors about their verdict. The notations are personal to the jurors and will not be laid open for inspection and debate.'" *Dykens*, 438 Mass. at 837, 784 N.E.2d at 1116, (quoting *Sligar v. Bartlett*, 916 P.2d 1383, 1387 (Okla. 1996)).

The petitioner also argues that his counsel was ineffective for failing to object to the judge's instructions on principal liability and then conceding his liability as a joint venturer in his closing argument. Prior to setting forth the elements of the crimes charged, the judge instructed the jury about principal and joint venture liability. In this context, he informed the jury that there can be more than a single principal in the commission of a crime (Tr. XI/74). The petitioner's claim of impropriety stems from the last sentence of this introduction, when the judge told the jury: "[w]hether someone else may have been a principal is irrelevant to this trial." The SJC found:

> The challenged sentence appears only once in the charge and, in context, is accurate; thus there was no basis for objection. The judge correctly instructed on principal liability. He also stated correctly that there could be more than one principal, but that it made no difference if there was another principal. The only question is whether this defendant acted as a principal either alone or with another

> principal.   Contrary to the defendant's assertion, this could not eviscerate his
> defense to the murder charge.  His defense was that he was too intoxicated to act
> as a principal.  Defense counsel presented evidence of the defendant's intoxication
> and then argued in closing that Keegan, not the defendant, was the principal, and
> in effect, that the defendant was too inebriated to have formed the necessary intent
> to kill.  He essentially argued that the Commonwealth had not proved its case, and
> that, while the defendant was not an innocent, he did not commit the crime as a
> principal.  The argument dovetailed with the instructions, and, given the facts of the
> case, was not an unreasonable strategic choice.

*Dykens*, 438 Mass. at 839, 784 N.E.2d at 1117-18.   Where there was no error in the jury

instructions,  the SJC's holding that counsel was not ineffective for failing to object was not

contrary to or an unreasonable application of *Strickland*.  Moreover,  trial counsel's closing

fit in with the defense strategy that the petitioner was too intoxicated to form the intent

required for murder and counsel cannot be found constitutionally ineffective for advancing

this strategy.

The petitioner's last claim of ineffective assistance stems from trial counsel's failure

to object to the fact that the kidnaping charge was a lesser included offense subsumed

within the charge of attempted aggravated rape.  He argues that because kidnaping was

one of the factors the jury could consider that would render the attempted rape an

aggravated one, the separate offense of kidnaping was duplicative and should not have

gone to the jury.  He also claims that the judge improperly instructed the jury that "any

restraint of a person's liberty is a confinement or an imprisonment."  The SJC reasonably

found that both of these claims must fail.

The jury indicated on the verdict slip that they found the petitioner guilty of attempted

aggravated rape based on the aggravating factors of kidnaping, joint venture, and serious

bodily injury.  *Dykens*, 438 Mass. at 840, 784 N.E.2d at 1119.  Since the jury found two

other factors besides kidnaping as the basis of the aggravating factors, the convictions

19

were not duplicative. *Id*. at 841.

The judge's instruction defining kidnaping was also in accordance with Massachusetts law. It would therefore have been fruitless for trial counsel to object to the instruction. *Dykens*, 438 Mass. at 841, 784 N.E.2d at 1119, citing to M.G.L. c. 160, § 30. The SJC's analysis of the petitioner's claims of ineffective assistance of counsel, therefore, was not contrary to or an unreasonable application of *Strickland*.

### III.   THE SJC'S HOLDING THAT THE JUDGE'S CLOSING OF THE COURTROOM DURING JURY INSTRUCTIONS DID NOT VIOLATE THE PETITIONER'S RIGHT TO A PUBLIC TRIAL WAS NOT AN UNREASONABLE APPLICATION OF SUPREME COURT CASELAW.

In his last claim, the petitioner argues that the SJC unreasonably applied federal caselaw when it held that the trial judge properly closed the courtroom during jury instructions. This claim must fail.

The Sixth Amendment affords the petitioner the right to a speedy and public hearing. However, it does not guarantee that trial will be conducted to fit the schedules of all who wish to attend." *Herring v. Meachum*, 11 F.3d 374, 379-380(2d Cir. 1993). As the Supreme Court explained:

> The central aim of a criminal proceeding must be to try the accused fairly, and our cases have uniformly recognized the public trial guarantee as one created for the benefit of the defendant. . . . The requirement of a public trial is for the benefit of the accused; and the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.

*Waller v. Georgia*, 467 U.S. 39, 46 (1984). *See also Estes v. Texas*, 381 U.S. 532, 588 (1965)(Harlan, J., concurring) ("Essentially, the public trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will

20

perform their respective functions more responsibly in an open court than in secret proceedings.").

In this case, the trial judge informed the public that nobody would be allowed to enter or leave the courtroom during his jury instructions and then provided a ten minute recess. The SJC found that this did not amount to a "closure" under the Sixth Amendment right to a public trial. The SJC reasoned that "the public had a reasonable opportunity to attend the charge. It is not unreasonable, and certainly not unconstitutional, to require that one who wishes to hear jury instructions hear them in their entirety and not interrupt the judge's charge by entering or leaving in the midst of it." *Dykens*, 438 Mass. at 836, 784 N.E.2d at 1115.[2]

The Supreme Court has not ruled on the issue of barring the public from entering or leaving the courtroom during jury instructions, and therefore this court's analysis should focus on whether the SJC's decision was an unreasonable application of Supreme Court caselaw on a defendant's right to a public trial.

In this case, the judge exercised his discretion (as is the practice in the Commonwealth) to inform the spectators that once he began instructing the jury, nobody could enter or leave the courtroom. This is far different than specifically barring certain members of the public (or all of the public) from observing trial proceedings. *See In re Oliver*, 333 U.S. 257, 270-272 (1948) (in which a judge, acting as a 'one-man grand jury' conducted an investigation in his chambers with the public excluded, charged a witness with contempt, immediately found him guilty and sentenced him to sixty days in jail). *See*

_____

[2] The SJC also recognized that "[m]ost jurisdictions that have considered the issue recently have arrived at a similar conclusion" (citations omitted). *Id*.

*also Commonwealth v. Marshall*, 356 Mass. 432, 435, 253 N.E.2d 333 (1969), (in which the SJC recognized that the Sixth Amendment right to a public trial applies to the states through Fourteenth Amendment, and reversed a conviction where the judge barred the defendant's mother, sister, brother and friend, as well as the general public from the courtroom). Thus, the judge's actions in closing the courtroom during jury instructions after giving the spectators warning did not amount to a violation of the petitioner's Sixth Amendment right to a public trial.

Other circuits have held that similar circumstances do not violate a defendant's Sixth Amendment right to a public trial. *See United States v. Romano*, 684 F.2d 1057 (2d Cir. 1982) (ruling that a defendant's claim that his rights were violated when the judge locked the courtroom doors during jury instructions was "frivolous"); *Snyder v. Coiner*, 510 F.2d 224, 230 (4th Cir. 1975) (ruling a complaint "trivial" that argued that a bailiff should not have refused entrance or exit to persons during closing arguments). The trial judge's temporary refusal to allow anyone to enter or exit during jury instructions was an action taken to facilitate the jury's understanding of its obligations, and is consistent with the Supreme Court's understanding of the functions of a "public hearing" as stated in *Waller, supra*. The SJC's reasoning was not an unreasonable application of Supreme Court caselaw on this issue and federal habeas relief must be denied on this claim.

## CONCLUSION

For the foregoing reasons, this court should deny the petition for habeas corpus.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Susanne G. Reardon
Susanne G. Reardon
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
BBO No. 561669

November 21, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the attached documents was served upon petitioner at the address below by first class mail, postage pre-paid, on November 21, 2006:

Timothy Dykens, pro se
P.O. Box 100
Walpole, MA 02071

/s/ Susanne G. Reardon
Susanne G. Reardon
Assistant Attorney General